MICHAEL A. LANDRUM v. JOE M. ARMBRUSTER AND IMPORT MOTOR PARTS OF WAYNESVILLE, INC.

No. 7530DC605

(Filed 7 January 1976)

1. **Uniform Commercial Code § 16—dishonored check — delivery under transaction of purchase — transfer of good title — good faith purchase — burden of proof**

   G.S. 25-2-403 allows a person who has obtained delivery of goods under a transaction of purchase to transfer a good title to a "good faith purchaser for value" even though such person obtained delivery in exchange for a check which is later dishonored or procured the delivery through criminal fraud; however, to terminate the original seller's reclamation rights, the subsequent purchaser must prove (1) that he was a purchaser, (2) that he purchased in good faith, and

Landrum v. Armbruster

(3) that he gave value, and the burden of proof rests upon the party making the later purchase.

2. **Rules of Civil Procedure § 56.— summary judgment — party having burden of proof — credibility of defendant as witness**

Because summary judgment was granted in favor of the defendant on an issue as to which he had the burden of proof and because in so doing the court depended entirely upon defendant's credibility as a witness in his own behalf, summary judgment was improperly entered.

APPEAL by plaintiff from *Leatherwood, Judge.* Judgment entered 21 April 1975 in District Court, HAYWOOD County. Heard in the Court of Appeals 23 October 1975.

This is a civil action to recover possession of a Titan Mark Six B Formula Ford Racing Vehicle. Plaintiff alleged that he is owner of the vehicle, that it was stolen from him on 25 May 1974, and that it is being wrongfully detained by defendants. Defendants filed answer in which the corporate defendant denied any interest in the vehicle and the individual defendant alleged that he purchased the vehicle in good faith on 10 June 1974 from one Stephen Johnson.

Defendants served written interrogatories upon the plaintiff, and plaintiff's answers thereto show the following: Plaintiff, a resident of Illinois, owned the vehicle on and prior to 25 May 1974. In April 1974 he advertised it for sale in *Autoweek,* a national publication. In late April a person identifying himself as Dave Ross from Clifton, New Jersey, telephoned plaintiff in response to the advertisement and inquired about the origin, history, general condition, and price of the vehicle. Thereafter Ross telephoned plaintiff on several occasions, continuing to express an interest in the vehicle. On 25 May 1974 Ross came to Illinois, examined the vehicle and its trailer, and after some discussion agreed to purchase the vehicle and trailer for $5000.00. Ross gave plaintiff what purported to be a "certified draft" for $5000.00 issued by a bank in Indiana. Ross then drove away with the vehicle and its trailer. The Indiana bank refused to honor the "certified draft" when it was presented for payment. On inquiry at the bank, plaintiff learned that a man matching the description of "Ross" had opened a small checking account by depositing $50.00 in cash at the bank, for that purpose using the name "Steven (or Stephen) Johnson" and furnishing the bank false identification information. When the account was opened, the bank gave "Johnson" eight tempo-

rary checks imprinted with an account number. After routine verification of "Johnson's" identification information failed to check out, and after receiving two checks totalling $8000.00 drawn on the account, the bank closed the account. Plaintiff also learned that on the same date on which Ross obtained plaintiff's vehicle, he also obtained two other racing vehicles from other persons in the Chicago area under similar circumstances, one of these vehicles being a Caldwell D-9 Formula Ford Racing car. Plaintiff has been unable to locate Ross since he drove away with plaintiff's vehicle and trailer on 25 May 1974.

Plaintiff also served written interrogatories upon the defendant, and the individual defendant's answers thereto show the following: In April 1974 a man who identified himself as Steven Johnson phoned defendant, supposedly from Indiana, and told defendant that Johnson's brother had died in Florida and that the attorney handling his brother's estate had informed him there were two Formula Ford racing cars as part of the estate. Johnson asked if defendant might be interested in buying these cars. Defendant told Johnson that he might, but Johnson at that time did not know the model of the cars and told defendant he would call back after he obtained more information. Sometime in May, Johnson called defendant back and described the cars as to model and year. After further telephone conversations, on 10 June 1974 Johnson arrived at defendant's plant in Waynesville, N. C., with the trailer and two racing cars, one being the vehicle which is the subject of this action and the other being a Caldwell D-9 Formula Ford. The cars were in terrible condition, especially the Titan. After some bickering, defendant offered Johnson $3,500.00 for the pair, which Johnson accepted.

Defendant moved for summary judgment dismissing plaintiff's action, supporting his motion by the answers to the interrogatories and by affidavits. In his own affidavit the individual defendant stated that he bought the Titan Mark 6 B Formula Ford from Johnson for $2,450.00, that he had no way of knowing that it might be a stolen vehicle as there is no certificate of title for a racing vehicle, and that $2,450.00 is a fair and reasonable wholesale price for a vehicle of this type. The affidavit of one Gordon stated that the affiant had bought and sold racing vehicles, had knowledge and experience with Titan Mark 6 B Formula Ford racing vehicles, had examined the

car here in question, and that in affiant's opinion $2,450.00 is a fair and reasonable wholesale price to pay for said vehicle.

In opposition to defendants motion for summary judgment, plaintiff filed his affidavit in which he stated that on 25 May 1974 the vehicle here in question was in an excellent state of repair and on that date the fair and reasonable market value of the vehicle was between $5000.00 and $5,500.00.

The court allowed defendant's motion for summary judgment and dismissed the action. Plaintiff appealed.

*Brown, Ward & Haynes, P.A., by Woodrow H. Griffin for plaintiff appellant.*

*Uzzell and DuMont by Larry Leake for defendant appellees.*

PARKER, Judge.

The right of the parties will be determined by application of pertinent provisions of the Uniform Commercial Code. Plaintiff's answers to defendants' interrogatories establish that plaintiff delivered his racing vehicle in Illinois under a transaction of purchase, the consequences of which are governed by G.S. 25-2-403. Insofar as here pertinent, G.S. 25-2-403 provides as follows:

> "*Power to transfer; good faith purchase of goods; 'entrusting.'*— (1) A purchaser of goods acquires all title which his transferor had or had power to transfer. . . . A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though
>
> \* \* \*
>
> (b) the delivery was in exchange for a check which is later dishonered, or
>
> \* \* \*
>
> (d) the delivery was procured through fraud punishable as larcenous under the criminal law."

[1] Contrary to the law of this State as it may have been prior to enactment of G.S. 25-2-403, that statute now allows a person who has obtained delivery of goods under a transaction of purchase to transfer a good title to a "good faith purchaser for

value" even though such person obtained delivery in exchange for a check which is later dishonored or procured the delivery through criminal fraud. *Lane v. Honeycutt*, 14 N.C. App. 436, 188 S.E. 2d 604 (1972). Clearly, however, not every subsequent purchaser from such a person is in a position to terminate the original seller's reclamation rights. "To prevail the subsequent purchaser must prove (1) that he was a purchaser, (2) that he purchased in good faith, and (3) that he gave value." Nordstram, Sales, § 170, p. 515. The burden of proof rests upon the party making the later purchase.

[2] The question presented by this appeal is the narrow one of whether the court was correct in making the crucial determination as to defendant Armbruster's status as a "good faith purchaser for value" by way of a summary judgment. We hold that it was not. As above noted, defendant Armbruster had the burden to prove his status as a "good faith purchaser for value." By statutory definition "good faith" in this context means "honesty in fact" in the transaction involved. G.S. 25-1-201(19). All of the facts and circumstances under which defendant acquired possession of plaintiff's vehicle from Ross Johnson are shown, at this state of this proceeding, solely by defendant's own answers to interrogatories and by his own affidavit. This court has held, applying the principles of *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971), that summary judgment may not be granted in favor of the party having the burden of proof when his right to prevail depends upon the credibility of his witnesses. *Shearin v. Indemnity Co.*, 27 N.C. App. 88, 218 S.E. 2d 207 (1975). Because summary judgment was granted here in favor of the defendant on an issue as to which he had the burden of proof and because in so doing the court depended entirely upon defendant's credibility as a witness in his own behalf, we hold that summary judgment was not here proper. Plaintiff is entitled to have the issue determined by the trier of the facts after a trial in which credibility of all witnesses can be properly determined. Accordingly, the summary judgment for defendant is reversed and this case is remanded for trial.

Reversed and remanded.

Judges MORRIS and MARTIN concur.