**LILES BROS. & SON, Plaintiff-Appellee,**

v.

**Carl WRIGHT, Defendant-Appellant.**

Supreme Court of Tennessee, at Jackson.

Sept. 7, 1982.

Robert F. Swayne, Neal, Swayne & Dorning, Paris, for defendant-appellant.

Thomas H. Rainey, Menzies, Rainey & Kizer, Jackson, for plaintiff-appellee.

## OPINION

BROCK, Justice.

The issue in this case is whether the defendant, Carl Wright, is a bona fide purchaser for value.

The case arises from the business activities of Tony Mangum which transpired during the fall of 1977 in western Tennessee and Kentucky. Mangum bought heavy equipment on credit from a number of dealers throughout the area and then resold this equipment to others at substantial discounts. Upon cessation of his activities, he owed local dealers in excess of $300,000.00.

The plaintiff, Liles Bros. & Son, is a Case equipment dealer in Jackson, Tennessee. On November 25, 1977, plaintiff sold Mangum a new 580C Case backhoe and loader for $20,561.00 from regular inventory. This was Liles first dealing with Mangum. During the course of the transaction, Mangum held himself out to be a Weakley County cattle operator and because of such an assertion, he was only charged the 1% farm use sales tax. Payment was made in the form of two checks. The first check, dated November 25, was for $3,000.00 and the second check, dated December 2, was for $17,561.00. Both checks were drawn on the account of Tony or Carol Mangum at City State Bank, Martin, Tennessee. At the time of the sale, William Liles contacted the bank and ascertained that there were ample funds in the account to cover the $3,000.00 check. He was assured by Mangum that the check dated December 2 would be good by that date.

The defendant, Carl Wright, operated a septic tank service which required the use of heavy equipment. On November 28, Mangum met Wright at the Farmer's Co-op and resold the new 580C backhoe to Wright, for $11,000.00. Mangum presented himself to Wright as a salesman of heavy equip-

ment. At the time of the transaction, Wright mentioned to Mangum that the equipment had better not be stolen because he had to finance it through a bank. Wright paid by cashier's check and financed the purchase with an $11,000.00 loan from Commercial Bank and Trust Co. The bank took a security interest in the equipment and perfected the same by filing a financing statement. The loan was made on November 28, and the financing statement was filed on December 2.[1]

On December 2, Liles learned that the postdated check he received from Mangum was dishonored. Although Mangum assured Liles that the money would be forthcoming, Liles, together with the Case representative, immediately met Mangum and had him sign a financing statement.

Liles next saw Mangum on December 6 at the Weakley County jail. Mangum was incarcerated on charges involving fraud in a similar farm equipment resale scheme. Liles attempted to learn the whereabouts of his equipment. Although Mangum was evasive, he told Liles that he thought the equipment was in Paris and that Wright might have it.

Liles then contacted Wright, notified him that the backhoe sold to Mangum had not been properly paid for, and gave him the serial number. During their conversation, however, Wright misstated the facts to Liles telling him that he bought this equipment before Thanksgiving and that he would check his hoe's serial number and call him back. Liles suspected that Wright had the backhoe but had no definite proof until he and Mr. Hixson, another local dealer who had previously been defrauded by Mangum in a similar equipment scheme, went upon the Wright property and discovered that the equipment in his possession was the backhoe for which Liles had been searching. Upon confrontation, Wright declined to voluntarily surrender possession of the hoe to Liles.

On February 28, 1978, Liles filed suit against Wright in Henry County Chancery Court seeking possession of the equipment. The plaintiff asserts that Wright was not a bona fide purchaser for value. He contends that he made proper demand for the return of the equipment and pursuant to T.C.A., § 47-2-702, he was entitled to have the equipment returned. Wright defended this suit on the theory that he was a good faith purchaser for value of goods under T.C.A., § 47-2-403, in which a good faith purchaser of goods may acquire good title even from a party with voidable title. The trial court found that the defendant was not a bona fide purchaser for value and ordered that the plaintiff receive immediate possession of the backhoe and loader in question. The Court of Appeals, Western Section, reversed, holding that the defendant was a bona fide purchaser for value.

Contrary to the holding of the Court of Appeals, there appears to be ample proof in the record that Wright had reason to believe that the property was stolen or obtained in a fraudulent or devious manner. The defendant's actions should not allow him to claim the status of good faith purchaser for value.

Since 1975, Wright was engaged in the construction business operating as Carl's Septic Service. He required the use of heavy equipment including a backhoe and loader. Wright owned two backhoes and was familiar with their operation and value.

Furthermore, Wright was in the market for a new backhoe and had recently solicited quotations from local equipment dealers. Wright contacted Mr. McKeel, an equipment dealer in Kentucky and sought the retail price of a 580C Case backhoe. At the time of the inquiry, the machine was selling for between $18,000.00 and $19,000.00, but he was quoted a price of approximately $12,000.00 which accounted for his trade-in. By November of 1977, McKeel was selling the 580C backhoe for approximately $20,000.00. In addition, Hixson, a Ford equipment dealer from Paris, Tennessee, fur-

---

1. The possessory interests of Commercial Bank and Trust are not at issue in this suit. By agreement of counsel this matter was reserved pending the final outcome of this litigation.

nished quotations to Wright for a comparable backhoe. Hixson's quotation was approximately $20,000.00. Wright also sought pricing information from Thomas Bratton, the Henry County Highway Superintendent, who in 1977 bought a backhoe from Liles Bros. for $11,880.00. However, this price reflected a 25% discount available to government entities; the county purchased a 580B backhoe—an older and less expensive model than the 580C; and the county also traded in a backhoe at the time of the purchase. Bratton indicated that $11,000.00 was the approximate wholesale price of a 580C backhoe and a purchase price of $11,000.00 would be a bargain. The record indicates, therefore, that Wright had ample knowledge of the true market value of the equipment which he purchased.

Other factors which would tend to indicate that Wright had notice of suspicious dealing include: the bill of sale was a blank purchase order without any reference to the name of Mangum's company, its location, its phone number, or the type of merchandise it handled; unlike previous backhoe purchases that Wright had made, he did not receive any warranty papers which is standard on a new machine; and unlike other heavy equipment dealers, such as Liles who specialized in Case equipment and Hixson who specialized in Ford equipment, Mangum specifically told Wright that he could make him a good deal on *any* kind of equipment that he wanted. Wright also admitted that he knew that quite a bit of equipment had recently been "stolen" in the western Tennessee and Kentucky area and he claimed he did not want to get involved in such dealings. Despite knowledge of the foregoing facts, Wright never inquired where Mangum's dealership or place of business was located; and, he never checked Mangum's credit reference with Watkins—the Co-op credit manager, who testified at trial that Mangum seemed to sell a lot of heavy equipment but nobody knew where it was coming from.

The Court, therefore, holds that the defendant, Wright, is not a bona fide purchaser for value. He did not conduct himself honestly in his purchase of the backhoe, and he had ample information which would have led a reasonably prudent person either to refuse to buy the backhoe or to make a considerably more detailed investigation of the facts before purchasing. Furthermore, he attempted to secrete the property so that the serial number could not be obtained when the plaintiff tried to locate the backhoe in question.

■ T.C.A., § 47–1–201(19), defines "good faith" as "honesty in fact in the conduct or transaction concerned." A buyer is not considered a good faith purchaser if he had "notice of facts that would put a reasonably prudent man on inquiry." 67 Am.Jur.2d *Sales* § 268.

■ If Wright was not a good faith purchaser of the backhoe, then he only has voidable title to the backhoe pursuant to T.C.A., § 47–2–403(1), and Liles Bros. has the right to possession of the backhoe, under a repossession action. T.C.A., § 47–2–403(1), states that "a person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase, the purchaser has such power even though: . . . (b) delivery was in exchange for a check which was later dishonored." The statute in effect recognizes that a person such as Mangum who buys goods in exchange for a check which is later dishonored only obtains voidable title, but has power to pass good title to a good faith purchaser for value. Since Wright was not a good faith purchaser of value, he too only received voidable title. Therefore, the original seller, Liles Bros., has the right to rescind its sale with Mangum, the original purchaser, who only had voidable title and reclaim the backhoe from the third party, Wright, because he, too, only had voidable title.

■ T.C.A., § 47–1–201(23), states that: "a person is insolvent who either has ceased to pay his debts in the ordinary course of business or who cannot pay his debts as they become due . . . ." However, the giving of a postdated check is equivalent to the maker of the check stating that

the debt for which the check is issued will be paid on the future date and the maker has funds available to make that check good. T.C.A., § 47–2–702, provides a special remedy for sellers upon discovery of the buyer's insolvency. T.C.A., § 47–2–702(2)(3), states:

"Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods on demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three (3) months before delivery, the ten day limitation does not apply ... (3) The seller's right to claim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser ...."

An exception to the ten day time limitation is made when a written representation of solvency has been made to the particular seller. To fall within the exception language, the statement of solvency must be in writing, addressed to the particular seller and dated within three months of the delivery. The postdated check signed by Mangum, issued to Liles Bros. and dated December 2 constitutes such a writing. On December 2, Liles Bros. learned that the check for $17,561.00 was dishonored. On that date, despite Mangum's assurances that the check would be good, Mangum signed a financing statement. On December 6, 1977, Liles visited Mangum in jail and attempted to reclaim possession of the backhoe. In order to comply with the demand requirements of T.C.A., § 47–2–702(2), a seller only needs to make a demand for a return of goods, not take actual possession. Therefore, Liles Bros. properly made demand upon Mangum for return of the backhoe pursuant to T.C.A., § 47–2–702. Thus, the Court finds that the postdated check under the facts and circumstances of this case, was a representation of solvency and Liles Bros. is entitled to possession of the backhoe.

The decision of the Court of Appeals is reversed and the trial court's decree awarding possession of the backhoe to Liles Bros.

is affirmed. Costs incurred upon appeal will be taxed against the defendant.

HARBISON, C.J., and FONES, COOPER and DROWOTA, JJ., concur.