[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 199 
This is a summary judgment case.
Darwin Dobbs Company, Inc. (Dobbs Co.) attempted to sell a 1984 Pontiac Fiero to Steve Saffold. Saffold received a title application and a sales invoice. The sales invoice reflected that title to the car would not pass to Saffold until his check to Dobbs cleared the bank, and that his check was "pending." The check was returned for insufficient funds on September 24, 1984.
On September 28 Saffold executed a bill of sale for the automobile to Ledbetter Auto Sales (Ledbetter Auto) for $9,500. It is undisputed that Ledbetter Auto had actual knowledge that the check from Saffold to Dobbs Co. had bounced before Ledbetter Auto attempted the purchase.
On October 1, 1984 the First National Bank of Alexander City (the bank) received a note and security agreement for $15,000, secured in part by the Fiero, and executed on behalf of Ledbetter Auto. The bank then attempted to perfect a security interest in the car based on its floor plan agreement with Ledbetter Auto.
Kenneth G. Ledbetter (Ledbetter) filed suit, demanding that Dobbs Co. convey good title in the automobile to him, or that he be paid $9,500. Dobbs Co. then filed suit against Saffold and Ledbetter with a writ of seizure. The bank was allowed to become a party in the case and filed an answer to Ledbetter's complaint and a counterclaim against Ledbetter, demanding the full amount due it by accelerating the security clause in its agreement with Ledbetter Auto or, alternatively, possession of the vehicle under its security agreement. All claims were consolidated for trial.
On January 15, 1985 the circuit court granted Dobbs Co.'s motion for a summary judgment against Ledbetter Auto and denied the bank's motion for a summary judgment. Ledbetter and the bank appeal. We reverse as to both appellants.
The law concerning summary judgments has recently been stated as follows:
 "It is well settled that for a summary judgment to be properly granted the pleadings and affidavits must show that there is no genuine issue as to any material fact such that the moving party is entitled to the relief sought strictly as a matter of law and that there is not even a scintilla of evidence supporting the position of the nonmovant. Silk v. Merrill Lynch, Pierce, Fenner Smith, 437 So.2d 112
(Ala. 1983); Alabama Rules of Civil Procedure 56 (c). The party moving for the summary judgment . . . has the burden of clearly showing that the nonmoving party . . . cannot recover under any discernible set of circumstances. Missildine v. Avondale Mills, Inc., 415 So.2d 1040 (Ala. 1981). The evidence must be viewed in the light most favorable to the nonmoving party and it must appear that the nonmoving party still cannot prevail. Forester Jerue, Inc. v. Daniels, 409 So.2d 830 (Ala. 1982)."
Cheatham v. General Motors Corp., 456 So.2d 1101 (Ala.Civ.App. 1984).
 I
Ledbetter contends that the summary judgment was improperly granted against him. We agree. *Page 200 
Ledbetter asserts in brief that the trial court evidently determined that title to the vehicle passed from Dobbs to Saffold by operation of section 7-2-401 (2), Code 1975, which provides:
 "(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place. . . ."
This section allows chattel title to pass from the seller to the buyer when the seller completes delivery of physical possession of the goods to the buyer, even though the certificate of title is to be delivered later and even though the seller retained a security interest. The parties can, however, agree otherwise. Here, the sales invoice clearly sets forth that chattel title would be retained by Dobbs Co. until Saffold's check was honored. This is an explicit agreement by the parties, i.e. Dobbs and Saffold, to pass chattel title other than upon delivery as set forth in this code section.
The leading commentators on the UCC have written that section 2-401 "purports to allow the parties to control passage of title, as between them, by contract terms" and that "[s]ection 2-403 . . . governs title vis a vis third parties." J. White 
R. Summers, Handbook of the Law Under the Uniform CommercialCode § 3-11 (2d ed. 1980) (emphasis in original). Thus, it is clear that Saffold did not obtain title to the vehicle under section 7-2-401 (2) since the parties had a written agreement to that effect.
However, Saffold may have still obtained voidable title under section 7-2-403, allowing him to pass good title to a good faith purchaser for value. Section 7-2-403, in pertinent part, provides:
 "(1) . . . A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though:
". . . .
 "(b) The delivery was in exchange for a check which is later dishonored. . . ."
§ 7-2-403 (1)(b), Code 1975.
Section 7-2-403 modifies pre-UCC law which generally allowed a party to transfer no better title to goods than he had, and establishes the proposition that a party with only voidable title can pass good title to a third party purchaser who acts in good faith. See 67 Am.Jur. Sales §§ 255, 256, 262 (1973). The good faith purchaser is then sheltered from attempts by the original seller to regain the goods.
The applicability of section 7-2-403 turns first on whether Saffold obtained voidable title from Dobbs. "Voidable title" is not defined in the UCC, but its meaning is left up to other state law. J. White R. Summers, supra, § 3-11 at 141. While we have found no Alabama cases on point, there are two federal decisions interpreting Alabama law which are helpful. InAmerican Standard Credit v. National Cement Co., 643 F.2d 248
(5th Cir. 1981), the United States Court of Appeals held that for there to be a voidable title there must have been a transaction of purchase which it defined as occurring when "the party who delivered the goods to the subsequent seller intended, however misguidedly, that the seller would become the owner of the goods." Id. at 268. This was cited with approval in CPI Oil Refining, Inc. v. Metro Energy Co., 557 F. Supp. 958
(N.D.Ala. 1983). Other jurisdictions agree that once there is delivery of possession of goods from a seller to a buyer, with the intent that the buyer become the owner of the goods, the buyer obtains voidable title. Accord Marvin v. Connelly, 26 U.C.C. Rep. Serv. (Callaghan) 370, 272 S.C. 425, 252 S.E.2d 562
(1979). This is in keeping with pre-UCC Alabama law that once an owner of a vehicle clothes another with possession of the vehicle and other indicia of ownership, a bona fide purchaser can gain good title through the purported first purchaser. J.L.McClure Motor Co. v. *Page 201 McClain, 34 Ala. App. 614, 42 So.2d 266 (1949). Furthermore, this is in line with recent Alabama cases holding that passing the certificate of title under Alabama's Uniform Certificate of Title Antitheft Act, §§ 32-8-1 to -14, -30 to -49, -60 to -67, -80 to -87, Code 1975, is not the exclusive method of passing title to an automobile. Wood Chevrolet Co. v. Bank ofthe Southeast, 352 So.2d 1350 (Ala. 1977); Congress FinanceCorp. v. Funderburk, 416 So.2d 1059 (Ala.Civ.App. 1982).
Thus, there is a transaction of purchase when there is a delivery of possession from the seller (Dobbs Co.) to the buyer (Saffold) with the intent that the buyer (Saffold) become the owner. It is undisputed that Dobbs Co. delivered the vehicle to Saffold intending that Saffold become the owner of the vehicle when Saffold's check cleared his bank. Therefore, there was a transaction of purchase within the meaning of section 7-2-403
(1)(b) and Saffold obtained voidable title to the vehicle.
For Saffold to pass good title a good faith purchaser must be found. Only then is a true owner estopped from contesting the good title of a good faith purchaser. See United Road MachineryCo. v. Jasper, 24 U.C.C. Rep. Serv. (Callaghan) 610,568 S.W.2d 242 (Ky.Ct.App. 1978).
How is the issue of good faith as to the subsequent transferee, here Ledbetter, to be determined? It must first be noted that Ledbetter is a merchant, § 7-2-104 (1), and is thereby held to a higher standard of good faith in attempting to become a good faith purchaser, than would be a nonmerchant. Good faith, as the term applies to a merchant, requires a showing of "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." § 7-2-103
(1)(b), Code 1975. This established both a subjective test — the white heart empty head standard — as well as an objective test — the reasonably prudent man standard — for determining whether the merchant acted in good faith. J. White R. Summers, supra, § 6-3 at 218. Whether a merchant acts in good faith is generally a jury question. Wyatt Oil Co. v. MaddenCoal Co., 455 So.2d 834 (Ala. 1984). This is especially true on summary judgment motions. See Landrum v. Armbruster, 18 U.C.C. Rep. Serv. (Callaghan) 910, 28 N.C. App. 250, 220 S.E.2d 842
(1976). If there is a scintilla of evidence that Ledbetter was a good faith purchaser, then this issue goes to the jury.
Based on the pleadings and affidavits of the parties, we find a scintilla of evidence upon which to reverse the order granting a summary judgment to Dobbs. Viewing the evidence in the light most favorable to the nonmoving party, Ledbetter here, Cheatham, supra, we find a factual dispute as to whether someone at Dobbs Co. told Ledbetter to finalize the automobile purchase from Saffold and to make the check out to only Saffold, not Saffold and Dobbs Co. Should a jury find that this statement was made, and that Ledbetter then acted in good faith in observing the standards of the industry, then Saffold, who held voidable title, passed good title to Ledbetter.
We therefore reverse the summary judgment in favor of Dobbs and remand for a trial on the merits of the case. However, the need for further proceedings may be obviated by our resolution of the issue below.
 II
The bank filed a counterclaim against Ledbetter, and later filed a motion for summary judgment on the counterclaim. The motion for a summary judgment was denied and the bank appeals. We reverse.
The bank had a floor plan agreement with Ledbetter Auto whereby it provided funds for Ledbetter Auto to acquire vehicles in exchange for a security interest in the vehicles. The vehicle at issue in this suit was specifically described in an agreement between the bank and Ledbetter purporting to grant the bank a security interest in the vehicle at issue as well as two others. The bank attempted to perfect its security agreement in accordance with state filing requirements.
The bank contends that it was wrongly denied a summary judgment against Ledbetter. *Page 202 
It claims to also fall within the purview of section 7-2-403
and thus be sheltered from attacks on its title to the vehicle.
Again, the first issue is whether the transferor, here Ledbetter, had voidable title. We have already held that Saffold held voidable title. But did Ledbetter? Even when a transferee (Saffold) of the original seller (Dobbs Co.) is not a good faith purchaser, an issue that we have determined must be put to a jury in the case at bar, the subsequent transferee (Ledbetter) of a party with voidable title (Saffold) can still obtain voidable title. 3 Anderson, supra, § 2-403:18 at 578.See also Liles Bros. Son v. Wright, 34 U.C.C. Rep. Serv. (Callaghan) 1174, 638 S.W.2d 383 (Tenn. 1982). Thus, regardless of the jury's determination of whether Ledbetter acted in good faith, Ledbetter took voidable title since there was delivery of possession from a transferor with voidable title (Saffold) to a subsequent transferee (Ledbetter) with intent that the transferee become the owner of the goods. American StandardCredit, supra; CPI Oil, supra.
The only remaining issue is whether the bank was a good faith purchaser. "Purchase" is broadly defined under the UCC, and includes "taking by . . . security interest . . . or any other voluntary transaction creating an interest in property." §7-1-201 (32), Code 1975. For the bank's security interest to attach, thereby becoming enforceable against the debtor or third parties, the bank must have a signed security agreement which adequately describes the vehicle, § 7-9-203 (1)(a), value must have been given, § 7-9-203 (1)(b), and Ledbetter must have some rights in the vehicle, § 7-9-203 (1)(c). The record contains a signed security agreement between the bank and Ledbetter; under the floor plan arrangement the bank gave value for the vehicle; and, as we have previously noted, Ledbetter has voidable title, which means that Dobbs Co. and Ledbetter Auto are estopped from denying that the bank has rights in the collateral. See, e.g., In re Pubs, Inc., 618 F.2d 432 (7th Cir. 1980); Avco Delta Corp. Canada Ltd. v. United States,459 F.2d 436 (7th Cir. 1972); Central National Bank v. Worden-Martin,Inc., 30 U.C.C. Rep. Serv. (Callaghan) 1140, 90 Ill. App.3d 601, 46 Ill.Dec. 99, 413 N.E.2d 539 (1980). The bank thus had a security interest in the vehicle, which it subsequently perfected. Since the bank took a security interest in the vehicle, it is a purchaser within the meaning employed by the UCC.
There is no dispute that the bank acted in good faith. When the bank is presented with an application for title which reflects no liens, and possession of the vehicle, it floor plans the vehicle in the ordinary course of its business. Nothing in the record reflects that the bank knew of any defect in Ledbetter's title, and there were no circumstances to put it on constructive notice of problems with the title. See, e.g.,Kimberly European Diamonds, Inc. v. Burbank, 684 F.2d 363
(6th Cir. 1982).
Thus, there is nothing in the record from which a scintilla of evidence is raised to dispute the bank's good faith. Since the bank is a good faith purchaser from one with voidable title, it gains good title to the vehicle. § 7-2-403 (1), Code 1975.
As stated above, on summary judgment motions all facts and reasonable inferences therefrom are to be viewed in the light most favorable to the nonmoving party, Ledbetter Auto here,Cheatham, supra; however, once the motion is supported in compliance with Alabama Rules of Civil Procedure 56 the motion is due to be granted when no genuine issue is raised. SeeButler v. Michigan Mut. Ins. Co., 402 So.2d 949 (Ala. 1981). Here, no issue was raised. Thus, the trial court erred as a matter of law in not granting the bank's motion for a summary judgment. We reverse.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
WRIGHT, P.J., and HOLMES, J., concur. *Page 489