CENTRAL NATIONAL BANK OF MATTOON, Plaintiff-Appellee, *v.* WORDEN-MARTIN, INC., Defendant-Appellee.—(CHAMPAIGN AUTO AUCTION, INC., Third-Party Intervenor-Appellant.)

Fourth District    No. 16245

Opinion filed December 1, 1980.

Greaves, Lerner & Gadau, of Champaign, for appellant.

Kidwell, Cummins & Bast, of Mattoon (Kenneth L. Bast, of counsel), for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal concerns priority as between a seller of an automobile who claims title to it, and a bank which claims a security interest in it. The basic dispute revolves about a question as to the necessity of formal transfer of title. This, in turn, requires an analysis of related sections of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 3—201 *et seq.*) and the Uniform Commercial Code—Secured Transactions (Ill. Rev. Stat. 1979, ch. 26, par. 9—101 *et seq.*).

The object of the controversy is a 1980 Lincoln automobile. It was sold at auction by the Champaign Auto Auction, Inc., intervenor herein (Auction), to one Smith, a dealer in Mattoon, through a third party who made the actual bid. The Auction was informed that Smith was the buyer and that he would pay for the car. The Auction approved the arrangement and gave possession of the car to Smith upon his representation of later payment therefor. In the meanwhile, the Auction retained the certificate of origin for the car but filed no financing statement.

During the same interval, that is, before payment by Smith and while

Auction was holding the certificate of origin, Smith executed a security agreement with the Central National Bank of Mattoon, plaintiff herein (Bank), covering some 10 automobiles as collateral and including the 1980 Lincoln. The Bank had floor-planned Smith's operation and had previously filed financing statements covering his inventory and after-acquired inventory.

The auction of the car took place on October 24, 1979, and Smith executed the security agreement and trust receipt on the Lincoln on October 29, 1979. The Bank was awaiting receipt of the title to the Lincoln and did not transfer funds into Smith's account until November 12 or 13, 1979. There was conflict in the testimony as to when the title was in fact delivered to the Bank.

Smith delivered his check in payment for the Lincoln to the Auction on November 15, 1979. On the same date, the Bank, having learned of Smith's insolvency and also having learned that his new-car inventory had been repossessed by General Motors Acceptance Corporation, which held security interests on it, repossessed all of Smith's used-car inventory, including the Lincoln. On November 20, 1979, Smith stopped payment on his check to the Auction.

At the time the Bank repossessed the Lincoln, it was physically located at Worden-Martin, Inc., another dealership, where it had been taken for repairs. Worden-Martin refused to deliver possession to the Bank, which brought a suit in replevin. The Auction intervened in that suit. Thus, the basic controversy is between the Bank and the Auction. The trial court held in favor of the Bank, and this appeal followed. We affirm.

The dispute must be resolved according to the provisions of the Uniform Commercial Code—Secured Transactions, and not under the Illinois Vehicle Code. It must first be determined whether the Bank may qualify as a secured creditor and, if so, whether it may then take precedence over a frustrated seller.

A security interest in an automobile is ordinarily perfected according to the provisions of chapter 3, article II, of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 3—201 *et seq.*). However, a specific exemption for a transaction of the type presented by the instant case exists as follows: "This Article does not apply to or affect: * * * (c) A security interest in a vehicle created by * * *." Ill. Rev. Stat. 1979, ch. 95½, par. 3—201.

This statutory provision is fortified by a complementary provision of the Uniform Commercial Code—Secured Transactions as follows:

"* * * (3) The filing of a financing statement otherwise required by this Article is not necessary or effective to perfect a security interest in property subject to
* * *

(b) the following statute of this State:

'The Illinois Vehicle Code'; but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this Article (Part 4) apply to a security interest in that collateral created by him as debtor * * *."

Ill. Rev. Stat. 1979, ch. 26, par. 9—302(3).

The record is clear that the Bank had filed the necessary financing statements on Smith's inventory. The question then becomes whether it had perfected its security interest in the Lincoln. This is governed by section 9—203 of the Uniform Commercial Code—Secured Transactions which reads in part as follows:

"(1) * * * a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

(a) * * * the debtor has signed a security agreement which contains a description of the collateral * * * and

(b) value has been given; and

(c) the debtor has rights in the collateral." Ill. Rev. Stat. 1979, ch. 26, par. 9—203(1).

The security agreement, signed by Smith, was admitted into evidence so requirement (a) has been met. The Auction argues that the Bank obtained both the Lincoln and the money advanced so that no value was given under requirement (b). However, the record is devoid of any evidence that the Bank recouped the money. Requirement (b) was met.

A primary area of dispute between the parties covers requirement (c). The Auction contends that the sale was one for cash, that it continued to hold the certificate of origin, that Smith's check was dishonored, and therefore he acquired no rights in the Lincoln. The Bank, on the other hand, maintains that this was a credit sale, since Smith was allowed to take immediate possession of the car and to pay later; therefore he did have rights in the collateral by way of possession, even though lacking formal written title.

We are of the opinion that Smith acquired sufficient rights in the Lincoln to meet requirement (c). Illinois does not require, as between the parties, a formal assignment of title. "(e) Except as provided in Section 3—113 and as between the parties, a transfer by an owner is not effective until the provisions of this Section and Section 3—115 have been complied with." Ill. Rev. Stat. 1979, ch. 95½, par. 3—112(e).

In analogous situations where the courts have looked to see if a buyer had an insurable interest in a vehicle, they have based the decision on the intention of the parties. *Perry v. Saleda* (1975), 34 Ill. App. 3d 729, 340 N.E.2d 314; *State Farm Mutual Automobile Insurance Co. v. Lucas* (1977), 50. Ill. App. 3d 894, 365 N.E.2d 1329.

A fair reading of the testimony of the part-owner and manager of the Auction, called as an adverse witness by the Bank, indicates that in this case, as in prior cases within the knowledge of the witness, Smith was given possession of the car upon his promise of later payment. It was clearly a credit sale with passing of title as between the parties.

The situation is governed by section 2—401 of the Uniform Commercial Code—Sales, which reads in part as follows:

"* * * (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place * * *." Ill. Rev. Stat. 1979, ch. 26, par. 2—401(2).

In a situation remarkably similar on its facts to the instant case the Supreme Court of Alabama held that under the foregoing section an automobile dealership could not claim priority over a bank which had a security interest. The dealership's claim was based on retention of certificates of origin. *Wood Chevrolet Co. v. Bank of the Southeast* (Ala. 1977), 352 So. 2d 1350.

It is to be emphasized that under section 9—203(1) of the Uniform Commercial Code—Secured Transactions, quoted above, the requirement is not title to, but only rights in, the collateral. By giving Smith possession of the collateral with title thereto, as between the parties, the Auction vested him with sufficient rights to sustain a security agreement. Even one with a voidable title possesses power to transfer it as good. Section 2—403 of the Uniform Commercial Code—Sales provides in part:

"(1) * * * A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though

* * *

(b) the delivery was in exchange for a check which is later dishonored * * *."

Ill. Rev. Stat. 1979, ch. 26, par. 2—403(1).

The Bank had perfected its security interest by proper filing, and it was entitled to priority over the Auction. The decision of the trial court was correct and it is affirmed.

Affirmed.

MILLS and CRAVEN, JJ., concur.