**THRIFT, INCORPORATED, Appellant (Defendant Below),**

v.

**A.D.E., INC., d/b/a Auto Dealers Exchange, Appellee (Plaintiff Below).**

No. 2–1282A408.

Court of Appeals of Indiana, First District.

Oct. 11, 1983.

Rehearing Denied Nov. 15, 1983.

---

R. Larry Drake, Evansville, for appellant.

Michael V. Gooch, Harrison & Moberly, Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

Thrift, Incorporated (Thrift) appeals the trial court's judgment which held that its security interests in three automobiles had not attached. The trial court ruled the automobiles were not inventory of a third party, Devers Auto Sales (Devers) and found in favor of the original seller, A.D.E., Inc. (A.D.E.).

We reverse.

A.D.E. is an Indiana corporation which engages in the sale of motor vehicles in Indianapolis. Thrift is also an Indiana corporation and one of its activities includes the financing of motor vehicles intended for resale. Devers was an automobile dealer in Evansville involved in the acquisition, purchase, and resale of motor vehicles.

Devers obtained inventory financing from Thrift which perfected its security interests in Devers's inventory by filing a financing statement with the Secretary of State pursuant to Article 9 of the Uniform Commercial Code, Ind.Code 26–1–9–101 *et seq.* The financing statement included a security interest in Devers's after acquired inventory. On February 18, 1981, A.D.E. entered an agreement to sell three automobiles to Devers. In order to prevent Devers

from making a return trip to Evansville, A.D.E. gave Devers possession of the three vehicles and Devers agreed to pay A.D.E. $20,335 on February 23, 1981. Thrift advanced Devers $17,975 and executed a trust receipt agreement which purported to give Thrift a security interest in the motor vehicles.[1] Devers tendered checks to A.D.E. on February 23, 1981, which were dishonored for insufficient funds.

The parties stipulated that Devers did not receive express permission to encumber, use, sell, or dispose of the automobiles until the sale from A.D.E. was completed. A.D.E. retained title to the vehicles at all times and did not give Devers any bills of sale or odometer verification statements regarding the vehicles. Devers mixed the automobiles with the other vehicles on its lot. There was no evidence that the vehicles were prepared or offered for sale prior to Devers's default on its financing agreement with Thrift on March 9, 1981. Upon default, Thrift took possession of Devers's inventory, including the three automobiles in question. Thrift demanded the titles of these vehicles from A.D.E., and A.D.E. demanded the return of the vehicles. This action followed with judgment entered in favor of A.D.E.

The trial court examined the provisions of Ind.Code § 26–1–9–204 and ruled that Thrift's security interests did not attach because Devers did not obtain any rights in the collateral. The trial court found that A.D.E. had a superior interest in the automobiles because it had retained the certificates of title and that Devers was a mere possessor or bailee of the vehicles. The trial court held that the three automobiles did not constitute inventory and thus, perfection of A.D.E.'s security interests had been accomplished by noting a valid lien or the certificates of title. The trial court also found that Thrift failed to inquire about the certificates of title prior to advancing funds to Devers.

The provisions of *Ind.Code* 26–1–9–302 control when a financing statement is required. This section provides:

(3) The filing provisions of this Article do not apply to a security interest in property subject to a statute

(b) of this state which provide for central filing of security interests in such property, or *in a motor vehicle which is not inventory held for sale for* which a certificate of title is required under the statutes of this state if a notation of such a security interest can be indicated by a public official on a certificate or duplicate thereof. (Emphasis added.)

This section indicates the filing provisions of Article 9 are still applicable to motor vehicles which are "inventory held for sale". *National Bank and Trust Co. of South Bend v. Moody Ford, Inc.,* (1971) 149 Ind.App. 479, 273 N.E.2d 757.

A.D.E. does not contest this interpretation of the statute, but argues the trial court correctly concluded that the vehicles did not constitute inventory. The classification of goods is contained in Ind.Code 26–1–9–109, which provides:

Sec. 109. Goods are

(1) "consumer goods" if they are used or bought for use primarily for personal, family or household purposes;

(2) "equipment" if they are used or bought for use primarily in business (including farming or a profession) or by a debtor who is a nonprofit organization or a governmental subdivision or agency or if the goods are not included in the definition of inventory, farm products or consumer goods;

(3) "farm products" [not applicable]

(4) "inventory" if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment.

---

**1.** The financing statement covering Devers's after acquired inventory was filed in 1964. A.D.E. does not contest the propriety of this filing nor does it argue that Thrift's interest is controlled by the trust receipt of February 20, 1981.

An examination of the comments regarding this section is very helpful. Comment 2 states that the classes of goods are mutually exclusive such that the goods can only be characterized as belonging in one of the four classes at the same time by the same person.

A characterization that the automobiles are consumer goods fails because Devers was engaged in the business of buying and selling motor vehicles, and the automobiles were not being used for personal, family, or household purposes. The determination which remains is whether the automobiles held by Devers constituted equipment or inventory. Comment 3 is dispositive of this question because it indicates that the principal test to determine whether goods are inventory is that they are held for immediate or ultimate sale. Although A.D.E. and Devers may have intended that Devers not encumber the vehicles for immediate sale until A.D.E. was paid, the facts clearly indicate that Devers held the automobiles for ultimate sale. Thus, the vehicles constituted inventory.

A.D.E. also argues that Thrift's security interest did not attach. Under the U.C.C., a party can only claim a security interest in property when the debtor has signed a security agreement, and the agreement contains a description of the collateral. The security interest does not attach to the collateral until there is an agreement that it attach, value is given, and the debtor has rights in the collateral. *Cargill, Inc. v. Perlich,* (1981) Ind.App., 418 N.E.2d 274. It is not contested that Thrift and Devers had an agreement describing the collateral or that value had been given, but A.D.E. does argue that Devers did not have rights in the collateral.

A.D.E. argues Devers merely had possession of the automobiles and did not have any rights in the collateral because A.D.E. retained the titles. A.D.E. supports its argument with the evidence that Devers did not have permission to sell or encumber the automobiles, nor did Devers receive bills of sale or odometer verification statements. A.D.E. directs our attention to *Gicinto v.*

*Credithrift of America, No. 3, Inc.,* (1976) 219 Kan. 766, 549 P.2d 870, where the opinion distinguished cash sales from credit transactions and found in favor of an automobile dealer who had retained the titles to motor vehicles after transferring the vehicles to another automobile dealer. *Gicinto* is distinguishable from the present situation because the secured party in *Gicinto* stipulated that its security interest was unperfected. Furthermore, the present case does not involve a cash sale as A.D.E. contends. Devers was not obligated to pay A.D.E. until February 23, 1981, which was five days after Devers received the automobiles. In *Central National Bank of Mattoon v. Worden-Martin, Inc.,* (1980) 90 Ill.App.3d 601, 46 Ill.Dec. 99, 413 N.E.2d 539, the Appellate Court of Illinois faced similar facts and ruled such an arrangement constitutes a credit sale. While A.D.E. correctly notes that mere possession of goods by a debtor does not establish rights in the collateral, *Cain v. Country Club Delicatessen, Inc.,* (1964) 25 Conn.Supp. 327, 203 A.2d 441, we believe Devers acquired an interest in the three automobiles.

The passage of title pursuant to an Article 2 transaction is contained in Ind.Code 26–1–2–401(1). This section in relevant part provides:

> Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited to a reservation of a security interest.

Moreover, the decision of *First National Bank of Elkhart County v. Smoker,* (1972) 153 Ind.App. 71, 286 N.E.2d 203, is dispositive on the issue of when the debtor obtains rights in the collateral. The decision held:

> [W]hen the debtor acquires possession of the collateral under a contract, he has acquired such rights in the collateral as to allow the security of his creditor to attach to the collateral, and this is true regardless of who may be deemed to have title to and ownership of such collateral.

153 Ind.App. at 81, 286 N.E.2d 203.

In the present case, Devers acquired an interest in the collateral when it received

possession of the automobiles from A.D.E. pursuant to their contract. Thus, Thrift's secured interest attached at that time. This result is in full accord with the holding of *Central National Bank of Mattoon v. Worden-Martin, supra,* which also found in favor of a secured party where a debtor, automobile dealer, acquired possession of motor vehicles pursuant to a contract from another automobile dealer who retained the titles to the vehicles.

A.D.E. argues the *Smoker* decision is distinguishable because *Smoker* involved cattle and not motor vehicles where priority interests are determined by notation of liens upon the certificates of title. However, as this opinion stated previously, motor vehicles held as inventory are not subject to these provisions. *National Bank and Trust Co. of South Bend v. Moody Ford, supra.* A.D.E. also argues the present case is distinguishable because A.D.E. and Devers did not intend for the titles to pass until A.D.E. received payment from Devers. In *Smoker,* the buyer and seller had an oral agreement to delay the passage of title until a specified time after delivery, which was in accordance with the custom and usage of the industry. We rejected this argument and found in favor of the secured creditor, holding that the cattle became a part of the buyer's inventory upon coming into his possession pursuant to a contract. We remain unpersuaded that the present case is distinguishable from *Smoker.*

The final argument A.D.E. presents is that Thrift, with reasonable diligence, could have protected itself by inquiring about the titles to the automobiles. While this assertion is true, it is also quite clear that A.D.E. could have taken precautions to protect its interest. A.D.E., as an automobile dealer must certainly be aware that other dealers have financing arrangements which are secured by the dealers' inventory. A fundamental policy of Article 9 of the U.C.C. is to discourage secret liens, *Matter of Maplewood Poultry Co.* (Bkrtcy.D.Me. 1980) 2 B.R. 550. A contrary decision would undercut this fundamental policy.

The judgment is reversed.

RATLIFF and NEAL, JJ., concur.