**UNION FEDERAL SAVINGS BANK, Appellant–Defendant,**

v.

**INB BANKING COMPANY SOUTH-WEST, Successor in Interest to the Peoples Savings Bank of Evansville, Indiana, Appellee–Plaintiff.**

No. 82A01–9105–CV–152.

Court of Appeals of Indiana, First District.

Dec. 10, 1991.

Marilyn R. Ratliff, Kahn, Dees, Donovan & Kahn, Evansville, for appellant-defendant.

Donald J. Fuchs, Stephen Hensleigh Thomas, Keith E. Rounder, Statham, Johnson & McCray, Evansville, for appellee-plaintiff.

BAKER, Judge.

This appeal concerns a dispute between two lending institutions, defendant-appellant Union Federal Savings Bank (Union Federal) and plaintiff-appellee INB Banking Company Southwest, successor in interest to The Peoples Savings Bank of Evansville, Indiana (jointly referred to as Peoples). The dispute arose over the priority of the banks' competing security interests in a 1986 Wellcraft boat. The trial court found in favor of Peoples, and Union Federal appeals.

Union Federal raises two issues for our review, which we restate as:

I. Whether the trial court erred in finding Peoples held a valid first lien.

II. Whether Peoples waived its right to assert its lien.

We affirm.

### FACTS

The facts are largely undisputed. They reveal that Steven K. Finney and Lynne M. Finney (Finney)[1] bought a 1986 Wellcraft 34 foot boat on February 26, 1986, with a loan obtained from Peoples.[2] Finney kept the boat for his personal use, and docked it at Inland Marina. Although Inland Marina was located on the north banks of the Ohio River and had an Evansville, Indiana address, the place of docking was actually located in Henderson County, Kentucky.

Finney was the president and chief operating officer of the Southern Telecom Corporation (STC). On February 26, 1986, he executed a pledge agreement in favor of Peoples in which the boat was pledged as collateral to secure, in part, the $905,900.00 debt STC owed to Peoples. On the same day, Peoples filed a financing statement for the boat in the office of the Clerk of Henderson County, Kentucky. On April 24, 1986, Finney registered the boat with the Department of Natural Resources of the Commonwealth of Kentucky, and the boat was assigned a Kentucky registration number.

Finney decided in late 1987 to sell the boat. Following several telephone conversations between Finney and Ronald D. Flick (Flick), Flick pursued with Union Federal the possibility of obtaining a loan to buy the boat. On January 18, 1988, Union Federal and Flick entered into a loan agreement, under which Flick signed a financing statement giving Union Federal a security interest in the boat he expected to purchase, and Union Federal gave Flick a check for $75,000.00. At that time, the boat was still docked in Henderson County,

---

1. Although both Steven and Lynne Finney signed the security agreement in favor of Peoples, we refer singularly to Steven Finney because he was primarily responsible for dealings concerning the boat.

2. There is no claim that Peoples obtained a purchase money security interest under IND. CODE 26–1–9–107.

Kentucky, and it still had a Kentucky registration number displayed on the hull.

Flick was the president and chief operating officer of Whitewater Ford Lincoln Mercury, Inc. (Whitewater), a car dealership. Although Flick intended to keep the boat for his personal use, the purchase contract eventually entered into was between Finney and Whitewater. Flick conceded at trial that the purchase was made through Whitewater so that Flick would not have to pay any sales tax. On January 27, 1988, Flick traded to Finney a Whitewater Ford pickup truck and gave Finney a check drawn on a Whitewater account for $68,000.00. Finney later deposited the Whitewater check in his personal account at Peoples. Flick took the boat off the Ohio River the next day, and, after some repair work in Cincinnati, Ohio, he docked it at Brookville Reservoir in Indiana. The boat has remained in Indiana since that time. Flick alleges he bought the boat from Whitewater on January 30, 1988, and reimbursed Whitewater for the full $75,-000.00 purchase price with the money he borrowed on January 18, 1988, from Union Federal. The record does not reveal, however, when Finney actually endorsed the Union Federal check to Whitewater. Finney never told Flick that Peoples held a lien on the boat.

Flick obtained an Indiana certificate of title for the boat on March 23, 1988. The title showed Whitewater as the owner but listed neither Peoples's nor Union Federal's lien. On August 29, 1989, a new Indiana certificate of title was issued showing again Whitewater as the owner, and showing, for the first time, Union Federal as first lien holder. When Flick sold his interest in Whitewater and became the sole owner of Ron Flick Pontiac, Buick, Oldsmobile, GMC, Inc., the change in ownership was reflected on a new certificate of title issued June 28, 1990. Again, the title showed Union Federal as first lien holder, while Peoples's lien was never noted on any Indiana certificate of title.

On March 31, 1988, the senior vice president of Peoples, Rick Castle, learned from Finney's business partner that Finney had sold the boat. Although Mr. Castle reported the information to Peoples's attorney, he made little or no inquiry at that time about the identity of the current owner or whereabouts of the boat or disposition of the boat proceeds. In the summer of 1988, Peoples made an additional loan to STC and obtained additional collateral.

In March or April 1989, STC became insolvent and a receiver was appointed to liquidate it. On July 24, 1989, legal counsel for Peoples advised Flick that Peoples claimed a security interest in the boat. On September 13, 1989, Peoples filed a complaint against Flick and Finney seeking foreclosure of the security interest in the boat, although the complaint was later dismissed against Finney due to the filing of his bankruptcy petition. On February 8, 1990, Peoples filed an amended complaint adding Union Federal as a defendant. The trial court entered judgment in favor of Peoples and against Flick and Union Federal.

## DISCUSSION AND DECISION

### I

■ Union Federal appeals from the trial court's general judgment in favor of Peoples. Therefore, it appeals an adverse judgment. When the trial court makes no findings of fact, we presume the judgment is based on findings supported by the evidence. *Greensburg Local No. 761 v. Robbins* (1990), Ind.App., 549 N.E.2d 79, 80, *trans. denied.* We must affirm the trial court's judgment if it can be sustained on any legal theory supported by the evidence. *Abels v. Monroe County Education Ass'n* (1986), Ind.App., 489 N.E.2d 533, 540, *cert. denied,* 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518. When making this determination, we do not reweigh the evidence or assess the credibility of witnesses. Instead, we consider only the evidence most favorable to the judgment together with all reasonable inferences drawn therefrom. *Id.*

The trial court ruled that Peoples held a "first, valid, and subsisting lien" on the boat, which was foreclosed by law against

Union Federal and Flick. *Record* at 109. In making this judgment, we find the trial court could have found that Peoples's security interest had priority against Union Federal because Peoples's interest never lapsed. Because we conclude the evidence supported this legal theory, we will not disturb the trial court's judgment.

■ The parties do not dispute that under Kentucky law Peoples properly perfected its security interest in the boat in Kentucky on February 26, 1986.[3] Union Federal argues, however, that Peoples's security interest lapsed against Union Federal on May 28, 1988, four months after the boat was moved to Indiana. We disagree.

To support its argument that Peoples's security interest lapsed, Union Federal relies on IND.CODE 26–1–9–103(1)(d), which provides, in relevant part:

When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by IC 26–1–9–301 through IC 26–9–318 to perfect the security interest:

(i) If the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four (4) months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal.

Indiana is a certificate of title state with respect to watercraft. IND.CODE 14–1–4–21(a).[4] As a certificate of title state, a secured party cannot perfect its interest in a watercraft by filing a financing statement. IND.CODE 26–1–9–302(3)(b). Rather, IND.CODE 14–1–4–21(a) mandates that a secured party must perfect its interest in a watercraft by noting the interest on the certificate of title. Because noting the interest on a certificate of title constitutes "action" to perfect an interest, Peoples was required to take this action within four months after the boat was moved to Indiana.[5] Peoples's failure to reperfect its

---

**3.** Kentucky was not a certificate of title state regarding boats until January 1, 1990. KRS 355.9–302(3)(b); KRS 235.055; KRS 186A. Therefore, the certificate of title provisions did not apply to Peoples when it perfected its security interest in Finney's boat on February 26, 1986. At the time of Peoples's perfection, the boat was a consumer good pursuant to KRS 355.9–109(1), because Finney bought and used the boat for his personal use. *See In re Scott* (Bankr.W.D.Ky 1985), 52 B.R. 821. As a consumer good not covered by a certificate of title, the choice of law rule under KRS 355.9–103(1)(b) provided the guidelines for determining which state's laws applied when more than one jurisdiction was involved. Here, two states were involved because Finney resided in Indiana but kept the boat in Kentucky. Under KRS 355.9–103(1)(b), the law governing perfection was the "law of the jurisdiction where the collateral [was] when the last event occur[ed] on which [was] based the assertion that the security interest [was] perfected or unperfected." In this case, the boat was in Kentucky when the last event took place under which it was claimed Peoples originally perfected its interest. Therefore, Kentucky law governed whether Peoples's original interest was perfected. Under Kentucky law KRS 355.9–401(1)(a), the proper place to file to perfect a security interest in consumer goods was "in the office of the county recorder in the county of the debtor's

residence or if the debtor is not a resident of this state then in the office of the county recorder in the county where the goods are kept...." In this case, Finney was an Indiana resident, but he kept the boat in Kentucky. To perfect its interest, Peoples was therefore required to, and did file its financing statement in the office of the county recorder in Henderson County, Kentucky. This filing gave Peoples a perfected security interest in Finney's boat.

**4.** Indiana became a certificate of title state regarding watercraft effective January 1, 1986. P.L. 157–1985, Sec. 1. The provision covering perfection of a security interest in a watercraft, IND.CODE 14–1–4–21, will be repealed effective January 1, 1992, and superseded by IND.CODE 9–31–2–24. P.L. 71–1991, Sec. 14.

**5.** Because Kentucky became a certificate of title state regarding boats effective January 1, 1990, IND.CODE 26–1–9–103(1)(d) no longer applies to boats moving from Kentucky to Indiana. When a boat moves from a certificate of title state into Indiana, IND.CODE 26–1–9–103(2)(b) applies. This provision provides:

Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the cer-

security interest in the boat within four months after the boat was moved to Indiana rendered its security interest unperfected against any person who purchased the boat during the four-month period or thereafter. *International Harvester Credit Corp. v. Pefley* (1983), Ind.App., 458 N.E.2d 257. The plain meaning of the code dictates, however, that Peoples's security interest did not become unperfected against a person who purchased the boat before it was moved to Indiana.

The issue then is whether the boat was purchased before or after it was moved to Indiana. In their briefs, the parties focus on whether Flick purchased the boat before it was moved to Indiana, but the determinative issue is whether Union Federal purchased the boat before it was moved to Indiana. If Union Federal was a "purchaser" before the boat was moved to Indiana, then Peoples's interest did not lose its priority status against Union Federal.

The code defines "purchase" under IND. CODE 26–1–1–201(32) as "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property," and "purchaser" under IND. CODE 26–1–1–201(33) as "a person who takes by purchase." Because a lien or pledge gives a secured party an interest in the collateral, a secured party is a "purchaser" as defined by the code. A creditor becomes a secured party when the creditor's interest attaches. IND.CODE 26–1–9–105(1)(m). Under IND.CODE 26–1–9–203(2), a creditor's security interest attaches, making the creditor a secured party, when: (a) the debtor has signed a security agreement that contains a description of the collateral; (b) value has been given; and (c) the debtor has rights in the collateral.

■ Contrary to Union Federal's assertions, the evidence supported the legal theory that Union Federal's security interest in the boat attached on January 27, 1988, before it was removed from Kentucky. It is undisputed that Flick signed the security agreement on January 18, 1988, and Union Federal gave value on January 18, 1988, when it gave Flick a check for $75,000.00.[6] Further, we find that Flick acquired rights in the boat pursuant to an oral agreement or understanding between Flick and Whitewater when Flick, in some capacity, obtained possession of the boat on January 27, 1988. As Union Federal correctly notes in its Brief, this court held in *Thrift, Inc. v. A.D.E., Inc.* (1983), Ind.App., 454 N.E.2d 878, 881, that possession of the collateral by the debtor pursuant to a contract gives the debtor rights in the collateral sufficient to support attachment of the creditor's security interest. *Appellant's Brief* at 18.

Union Federal argued in its Reply Brief and at oral argument that Flick did not obtain rights in the boat until he paid Whitewater the purchase price sometime after Flick had removed the boat from Kentucky.[7] As a result, argues Union Federal, Whitewater was the purchaser on January 27, 1988. Because Whitewater was not Union Federal's debtor, Union Federal's security interest did not attach on that day. We disagree.

■ This court has held that payment of the purchase price does not control when a buyer acquires rights in the collateral sufficient to support the attachment of its creditor's security interest. *Thrift, supra.* Neither does title have to be in the purchaser's name before its creditor's security interest can attach. IND.CODE 26–1–9–202 provides that title to collateral is immaterial with regard to determining the parties' rights, obligations and remedies under Article 9. *See Thrift, supra* (buyer ac-

---

tificate until four (4) months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction but, in any event, not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section.

6. Union Federal misreads the statute as requiring that the debtor give value before the creditor's security interest can attach. It is the creditor who must give value. *See* J. WHITE AND R. SUMMERS, UNIFORM COMMERCIAL CODE § 24–6 (3d ed. 1988).

7. Oral argument was heard in this case on November 12, 1991.

quired rights even though it had not received certificates of title); *First National Bank of Elkhart County v. Smoker* (1972), 153 Ind.App. 71, 286 N.E.2d 203 (debtor had rights in cattle regardless of whether he had obtained title); *Hartford National Bank and Trust Co. v. Essex Yacht Sales, Inc.* (1985), 4 Conn.App. 58, 492 A.2d 230 (retention of title in boats not sufficient to prevent creditor's security interest from attaching); *Central National Bank of Mattoon v. Worden–Martin, Inc.* (1980), 90 Ill.App.3d 601, 46 Ill.Dec. 99, 413 N.E.2d 539 (auctioneer's retention of certificate of title did not prevent debtor-purchaser, who promised subsequent payment, from acquiring rights in automobiles sufficient for creditor's security interest to attach).

Here, it is undisputed that neither Flick nor Whitewater intended Whitewater to have an ownership interest in the boat. Whitewater was involved in the transaction so Flick could avoid paying sales tax. As well, Flick put the title in Whitewater's name, rather than in his own, so he could continue to avoid the taxes. When Flick took possession of the boat on January 27, 1988, and thereafter, he was personally responsible for repaying the loan from Union Federal, he had exclusive control over the boat, he had the right to sell or further encumber the boat, and he assumed all risks of owning the boat. All of these factors support the conclusion Flick had rights in the boat on January 27, 1988. *See Kinetics Technology International Corp. v. Fourth National Bank of Tulsa* (10th Cir.1983), 705 F.2d 396 (debtor had some degree of control or authority over collateral in debtor's possession); *Douglas–Guardian Warehouse Corp. v. Esslair Endsley Co.* (W.D.Mich.1971), 10 UCC 176 (debtor had right to sell and assumed duty to preserve goods); *Uniroyal, Inc. v. Michigan Bank, N.A.* (Mich.Cir.Ct.1972), 12 UCC 745 (rights of exclusive use, control and possession sufficient to constitute rights in collateral).

We conclude the evidence supported finding that Union Federal's security interest in the boat attached on January 27, 1988. This made Union Federal a "purchaser" of the boat, as defined by the code, before the boat was moved to Indiana. Therefore, IND.CODE 26–1–9–103(1)(d) did not apply, and Peoples's security interest was not unperfected against Union Federal even though Peoples did not reperfect its interest in Indiana. Under this legal theory, we affirm the trial court's judgment that Peoples held a first priority lien.

## II

■ Union Federal also argues that even if Peoples's lien did not lapse against Union Federal, Peoples otherwise waived the right to assert its interest.[8] Specifically, Union Federal complains that after Peoples learned Finney sold the boat, Peoples failed either to notify Flick or Union Federal about its interest or to reperfect its interest in Indiana.

■ Because Union Federal had the burden of proving waiver at trial and lost, it now appeals a negative judgment as to this issue. *Salem Community School Corp. v. Richman* (1980), Ind.App., 406 N.E.2d 269, 274. To be successful here, Union Federal must show that the trial court's judgment was contrary to law. *Chandley Enterprises v. Evansville* (1990), Ind.App., 563 N.E.2d 672, 674, *trans. denied.* We may reverse the trial court only when the evidence is uncontradicted and leads unerringly to a conclusion different from that reached by the trial court. *Id.*

■ We find that Union Federal did not meet its burden of proof to show as a matter of law Peoples waived its rights as first lien holder. Waiver is defined as "the intentional relinquishment of a known

8. In its brief, Union Federal also argues that Peoples is estopped from asserting its lien. At oral argument, however, counsel for Union Federal conceded that the doctrine of estoppel does not apply here. Estoppel is appropriate only when the evidence shows detrimental reliance by one party, induced by the other party's spoken words, positive acts, or silence when there was a duty to speak. *Sheraton Corp. of America v. Kingsford Packing Co., Inc.* (1974), 162 Ind. App. 470, 319 N.E.2d 852. Here, there was no evidence Peoples's conduct led Union Federal to detrimentally rely on Peoples not enforcing its first priority lien.

right" or "an election to forego some advantage that might otherwise have been insisted upon." *Salem Community School Corp., supra.* Silence may constitute waiver, but only when there is a duty to speak or to otherwise take action. *Richardson v. State* (1983), Ind.App., 456 N.E.2d 1063, 1066. To support its claim of intentional relinquishment, Union Federal points only to evidence of Peoples's inaction. Specifically, Union Federal reiterates that after learning Finney sold the boat, Peoples did not attempt to locate the boat, notify Flick or Union Federal about its interest, or reperfect its interest in Indiana within the four month period. "Mere silence, acquiescence or inactivity is not waiver...." *American National Bank & Trust Company v. St. Joseph Valley Bank* (1979), 180 Ind.App. 546, 554, 391 N.E.2d 685, 687.

Furthermore, Peoples's failure to notify Flick or Union Federal about its perfected interest, either directly or by reperfecting in Indiana, did not amount to waiver because, at least with regard to Union Federal, Peoples did not have a duty to speak. IND.CODE 26–1–9–103(1)(d) provides that Peoples had to reperfect its interest in Indiana only if it wanted to remain a perfected secured party against "a person who became a purchaser after removal." Peoples did not need to take this action, or any other action, to remain perfected against Union Federal.

Finally, allowing Peoples to prevail, as is required under our reading of the code, is both equitable and just. Although this court has recognized that "[a] fundamental policy of Article 9 of the Uniform Commercial Code is to discourage secret liens," *Thrift, supra,* at 882, Union Federal had an opportunity to discover Peoples's lien; it was not secret. When Flick, Union Federal's debtor, began negotiating to buy Finney's boat, the boat was docked in Kentucky, and, more important, the boat had Kentucky registration numbers displayed on the hull. Had Union Federal investigated whether anyone claimed a security interest in the boat, it could have identified Peoples's interest through the Kentucky filing system. Union Federal now asks us to penalize Peoples for failing to investigate the sale of the boat, although Union Federal failed to investigate whether a prior perfected lien existed. When a creditor properly perfects its security interest, as Peoples did in Kentucky, this perfection serves as notice to third parties that a prior first lien is held. *Peoples State Bank of Clay County v. Thompson* (1984), Ind. App., 462 N.E.2d 1068, 1072 (basic purpose of filing under the U.C.C. is to give public notice of the filing). Because Union Federal did not act to protect its interest as provided for by Article 9 of the Uniform Commercial Code, the law will not now protect it.

The judgment is affirmed.

ROBERTSON and GARRARD, JJ., concur.