**RED ARROW VENTURES, LTD., Thomas W. Hayes, Claudia Langman, and Carol P. Eastin, Appellants–Defendants,**

v.

**Juanita Ellen MILLER f/k/a Juanita Ellen Gradowski, Appellee–Plaintiff.**

No. 46A05–9701–CV–9.

Court of Appeals of Indiana.

March 23, 1998.

Atley C. Price, Braje & Nelson, Michigan City, for Appellants–Defendants.

Mark A. Lienhoop, Newby, Lewis, Kaminski & Jones, LaPorte, Lee Dabagia, Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos, Michigan City, for Appellee–Plaintiff.

## OPINION

BARTEAU, Judge.

Defendants Red Arrow Ventures, Ltd., Thomas Hayes, and Claudia Langman appeal the trial court's judgment that granted Plaintiff Juanita Miller's Motion to Enforce Settlement Agreement. We restate the issues that the defendants present for our review:

1. Whether the trial court's judgment was supported by sufficient evidence.

2. Whether the trial court properly awarded the plaintiff attorney fees.

3. Whether the trial court erred when, during the Motion to Enforce Settlement Agreement hearing, it refused to disqualify plaintiff's counsel from representing the plaintiff.

Affirmed in part and reversed in part.

### FACTS [1]

The facts most favorable to the judgment follow. On June 5, 1992, Miller filed a complaint against the defendants. The complaint alleged that the defendants had breached their promise to make payments on a promissory note which they had executed in favor of Miller. On December 23, 1992, the defendants filed an answer to Miller's complaint. The answer denied most of the complaint's allegations and also asserted a counterclaim against Miller.

On December 17, 1993, the trial court ordered that the parties participate in mediation. On September 21, 1994, a mediation session was held, but it did not produce a settlement of the parties' dispute. The parties then proceeded to litigate their dispute in a bench trial. The trial lasted three days and occurred in May of 1996. At the end of the trial, the judge informed the parties that, although he would be ruling against the defendants, he had not yet determined what amount of damages would be awarded to Miller.

About an hour after the trial had concluded, the defendants' attorney, Steven Ruffalo, met with Miller's attorney, Lee Dabagia, at the latter's office. The two attorneys discussed whether a settlement might be reached between the parties. Suggesting an amount of money that the plaintiff might be willing to accept from the defendants in settlement, Dabagia "tendered a figure" to Ruffalo. R. 1641. In response, Ruffalo suggested that he might be able to convince the defendants to settle for the tendered amount.

Later that day, Ruffalo discussed Dabagia's tendered amount with the defendants. Ruffalo then informed Dabagia, by telephone, that the tendered amount was not satisfactory to Defendant Langman.

Two days later, the attorneys again spoke with each other by telephone. During their conversation, Dabagia told Ruffalo that Miller would accept $21,000 in settlement. Ruffalo responded that the defendants were satisfied with the $21,000 amount. Ruffalo then faxed Dabagia a letter, dated May 17, 1996, which stated, in relevant part:

Dear Lee:

As we discussed today, the parties have agreed to settle their dispute for a lump sum payment of $21,000 from Claudia Langman and Tom Hayes to Juanita Gradowski/Miller.

Tom and Claudia will be talking with a banker on Monday, in connection with obtaining a loan to make the payment. I will call you Monday to give you a status report on the loan. Since the money will be by means of the bank financing, my clients anticipate that it will take thirty (30) to sixty (60) days for the loan to be processed and funded.

R. 1742. In reply, Dabagia, on May 20, 1996, faxed and mailed to Ruffalo a letter which stated, in relevant part:

Dear Steve:

I acknowledge receipt of your letter facsimile transmission dated May 17, 1996, confirming that the parties ... have agreed to settle all disputes for a lump sum payment of $21,000.00 from Claudia

---

1. The statement of facts contained in the defendants' appellate brief is largely a witness-by-witness summary of testimony. Indiana Appellate Rule 8.3(A)(5) requires that a statement of facts be presented in a narrative format. *See Mitchell* *v. Stevenson,* 677 N.E.2d 551, 555 n. 1 (Ind.Ct. App.1997), *trans. denied.* "We have stated repeatedly that a summary of the witnesses' testimony is not a statement of the facts within the meaning of the appellate rules." *Id.*

Langman and Tom Hayes to Juanita Gradowski–Miller.

As further agreed, payment of the agreed settlement by your clients will be made no later than July 17, 1996.

R. 1744. After this letter was sent, Ruffalo asked Dabagia to tell the trial judge that a settlement had been reached and that judgment should not be entered. Then, on June 4, 1996, Ruffalo sent Dabagia a letter which stated, in relevant part:

Dear Lee:

Please let this letter confirm that the terms of the parties' agreement are accurately set forth in your letter of May 20, 1996. I trust that you have contacted [the trial judge] to advise him of our accord so as to insure that no judgment is entered in connection with this matter.

. . . .

[P]lease forward to me the appropriate Stipulation to Dismiss so that I can obtain my client's signature and forward the Stipulation together with payment on to you in due course.

R. 1746. Dabagia subsequently prepared a stipulation to dismiss and sent six copies of it, along with a letter dated June 5, 1996, to Ruffalo.

Between July 16 and July 18 of 1996, Dabagia telephoned Ruffalo, inquiring into the status of the settlement. Ruffalo said that he was preparing a mutual release agreement, and he faxed it to Dabagia soon after their telephone conversation. Dabagia then faxed Ruffalo a letter which expressed Dabagia's satisfaction with the mutual release agreement and requested that Ruffalo send Dabagia "the settlement check together with [the defendants'] signatures on the Release and Stipulations of Dismissal...." R. 1759.

After this, Dabagia attempted, without success, to contact Ruffalo during the next few days. Dabagia finally spoke with Ruffalo around July 30, 1996. At that time, Ruffalo told Dabagia that the defendants "didn't want to pay the settlement[.]" R. 1644. Dabagia then filed, on Miller's behalf, a Motion to Enforce Settlement Agreement. A hearing on this motion was held on August 30, 1996, and September 16, 1996. At the end of the hearing, the trial court granted the Motion to Enforce Settlement Agreement and issued a written judgment which stated, in relevant part:

Having heard testimony of the witnesses, examined all admitted exhibits and after consideration of oral argument made by counsel, the Court now finds that the Plaintiff's Motion to Enforce Settlement Agreement should be granted and that Plaintiff should further be awarded attorney fees in the sum of ONE THOUSAND DOLLARS....

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that the Motion to Enforce Settlement Agreement filed by Plaintiff ... is hereby granted and judgment is now entered against the Defendants ... in the sum of TWENTY–ONE THOUSAND DOLLARS ... together with interest from this date forward....

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all other claims, counter-claims and cross-claims made and pending in this action are hereby dismissed, said judgment enforcing the Settlement Agreement and awarding attorney fees representing a final judgment among the parties on all issues herein.

R. 249.

### THE ENFORCEABILITY OF SETTLEMENT AGREEMENTS IN INDIANA

#### I.

According to the defendants, the evidence does not support a finding that the parties' attorneys arrived at a settlement agreement. We will address this argument in Section IV.

The defendants also argue that any settlement agreement which might have existed between the parties' attorneys is not enforceable because it was not consented to by the defendants. In their appellate brief, the defendants support their argument with the authority of *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978 (Ind.Ct.App.1993), *trans. denied* and *Gravens v. Auto–Owners Ins. Co.*, 666 N.E.2d 964 (Ind.Ct.App.1996), *trans. denied.* The defendants seem to cite these cases for

the following proposition: a settlement agreement into which an attorney enters is not enforceable against his client who has not consented to be bound by it. The defendants imply that *Klebes* and *Gravens* require us to resolve this appeal by determining whether they indeed consented to be bound by the settlement agreement.

## II.

◼ *Klebes* and *Gravens* seem to be at variance with the rule—previously established and long held by Indiana courts—that a settlement agreement into which an attorney enters may be enforced against his client who has not consented to be bound by it. The state of the law before *Klebes* and *Gravens,* and the state of the law since these cases, have been well explained by Judge Robert Miller in *Koval v. Simon–Telelect, Inc.*:

> Indiana law views an attorney as a powerful agent. An attorney has apparent authority to dismiss a case, to allow judgment against the client, and to do all things ordinarily done with respect to the litigation for which the attorney was hired.

> At least until September 1996, the law of Indiana with respect to the authority a party grants its attorney through the retention agreement remained as set forth years ago; with the probable exception of the need to modify pronouns to reflect today's profession, that statement of Indiana law remained unchanged by later decisions:

>> The attorney for the plaintiff was in court, objecting to the proposed dismissal. His authority is not only presumed, but conclusively established by written contracts of employment.... "In the general management of a suit the attorney has a very extensive authority. * * * The conduct of a suit except in a matter arising in the argument or hearing before the court is exclusively under the control of the attorney of record in it." The authority which an attorney exercises under a general retainer is not the subject of uncertainty. "He is more than the mere agent as to the business

committed to his care. He is the sole manager."

*Miedreich v. Rank,* 40 Ind.App. 393, [396–97,] 82 N.E. 117, 118 (1907) (citations omitted); *accord, Thompson v. Pershing,* 86 Ind. 303[, 310] (1882) ("The allegation in the complaint, that the attorney of the appellant had [no] authority to make the agreement upon which the judgment was rendered in the original action, must be understood to mean that the appellants had not, in fact, authorized him to make the agreement. But, by employing him to appear for them in the action as their attorney, they did impliedly authorize him to make such agreement. An attorney may, without express authority, bind his client by agreement that judgment may be taken against him, and that, too, though the attorney know that his client has a good defence to [said] action. If he acts contrary to the express directions of his client, or to his injury, the client must look to the attorney for redress."). At least until September 1996, these principles continued to control Indiana cases. *See, e.g., Mirka v. Fairfield of America, Inc.,* 627 N.E.2d 449, 450 n. 1 (Ind.Ct.App.1994) ("In the absence of fraud by the attorney, the client is bound by the actions of his attorney ... even though the attorney is guilty of gross negligence."); *Farm Credit Services v. Estate of Decker,* 624 N.E.2d 491, 495 (Ind.Ct.App.1993) ("[T]he general and long standing rule in this jurisdiction is that absent fraud or collusion between the attorney and the opposing side, acts or omissions of the attorney are attributable to the client.").

Several Indiana cases have held that an attorney has the apparent authority to settle a claim without the client's consent. *Ferrara v. Genduso,* 214 Ind. 99, [100–02,] 14 N.E.2d 580, 581[–82] (1938) ( [appellants] retained counsel to defend them in foreclosure suit, but did not expressly authorize attorneys to settle case; attorneys nonetheless agreed with opposing counsel to entry of agreed judgment, and did not appear for trial; [appellants'] efforts to set aside judgment rejected); *Guydon v. Taylor,* 115 Ind.App. 685, [690,] 60 N.E.2d 750, 751 (1945) ("This attorney was clothed,

under the law, with ample authority to bind appellant by agreeing to the rendition of the judgment set forth in the transcript filed by the Justice of the Peace."); *Evansville Improvement Co. of Vanderburgh County v. Gardner,* 75 Ind.App. 401, [408–09,] 128 N.E. 471[, 473] (1920) ("In this case appellant had joined in the execution of the mortgage for the payment of which the real estate was [sold by the trustee], under the order of the court. When the assignment was made she employed an attorney who represented her throughout the assignment proceedings, being present and joining in or acquiescing in each step taken, pertaining to the sale of the real estate involved. That she was bound by his acts has been repeatedly decided."); *accord, International Vacuum, Inc. v. Owens,* 439 N.E.2d 188, 190 ( [Ind.Ct.App.] 1982) (no abuse of discretion in refusing to vacate default judgment when court's notices to defendant's attorney were returned undeliverable, and attorney failed to keep himself apprised of court proceedings); *see also Devenbaugh v. Nifer,* 3 Ind.App. 379, [380–82,] 29 N.E. 923, [923–24] (1892) (defendant awaited word from attorney as to when trial was to be held; a week before trial, according to client and attorney, attorney dispatched deputy sheriff to client's house with blank subpoenas for client's witnesses, with instructions to complete forms for deputy to deliver, but deputy was too drunk to reach client's house, so client remained ignorant of trial date; client failed to appear for trial, and attorney assumed client was abandoning defense of case, and consented to entry of judgment in full amount of claim; appellate court upheld refusal to set judgment aside: "His employment in the cause generally gives such attorney the power to agree to an entry of judgment, and, if he violates his instructions, the client must look for redress to the attorney."); *Biddle v. Pierce,* 13 Ind.App. 239, [246–47,] 41 N.E. 475, 477 (1895). The attorney also has the right to dismiss the claim on which the attorney was retained, without the client's consent. *Cory v. Howard,* 88 Ind. App. 503, [505,] 164 N.E. 639, [639–40] (1929) ("As the dismissal of a suit does not

bar the bringing of another for the same cause of action, the attorney of record has the implied authority to discontinue the action if he sees fit.... As the attorney had the authority to make the agreement to dismiss the action, it follows that appellant was bound thereby the same as if he had made the agreement himself.").

In light of this apparent authority granted by law, a party seeking to resolve litigation was free to discuss settlement with the attorney as if discussion were with the client. *Black v. Krauss,* 119 Ind.App. 529, [539,] 85 N.E.2d 647, 651 (1949) ("Luhring's dealings with Bippus and Walker in the Walker office at the time of [the] delivery of the deed, which dealings were at the instance and request of Mrs. Black's attorneys and in response to their letter to Luhring requesting settlement in the manner which was finally carried out, was clearly equivalent to such dealing directly with Mrs. Black....").

One recent appellate decision contained language that appears to signal a retreat from the historic breadth of an attorney's agency. In *Klebes v. Forest Lake Corp.,* 607 N.E.2d 978 (Ind.Ct.App.1993), the clients had authorized their attorney to attempt to settle a case. The attorney did so, but the clients disliked the settlement's terms and refused to sign the dismissal papers. The trial court reduced the settlement to judgment over the clients' objection, and the clients appealed. In affirming, the court of appeals wrote, "Although a client has full authority over the decision whether to settle the case or proceed to trial, Ind.Professional Conduct Rule 1.2, attorneys act as agents of their clients and may enter enforceable settlement agreements on their behalf if they first secure their client's consent to do so. *Mid–States Aircraft Engines v. Mize Co.*[, 467 N.E.2d 1242, 1248 (Ind.Ct.App.1984) ]; *Miedreich v. Rank*[, 40 Ind.App. 393, 82 N.E. 117 (1907) ]." [*Klebes,* 607 N.E.2d at 982.] Whether the clients consented to settlement negotiations was not an issue in the case, so the suggested limitation on the attorney's authority to settle a claim can only be considered *dicta.*

. . . .

[Then,] [i]n September 1996, the Indiana Court of Appeals decided a case at odds with the cases discussed above. In *Gravens v. Auto–Owners Ins. Co.*, 666 N.E.2d 964 (Ind.Ct.App.1996), Gravens retained an attorney to sue his insurer. Gravens did not authorize his attorney to settle the claim, but the attorney did so anyway, before filing suit. Gravens hired another attorney, who filed suit, and the insurer defended on the basis of accord and satisfaction. The trial court granted summary judgment to the insurer, but the court of appeals reversed. The appellate court's brief opinion explained, first its belief that it was writing on a clean slate, and then its reasoning:

> Indiana law is well-settled that an attorney has, by virtue of his employment, the general implied authority to do on behalf of the client all acts in or out of court necessary or incidental to the prosecution or management of the suit or the accomplishment of the purpose for which he was retained. *United Farm Bureau [Mutual] Insurance Company v. Groen*, 486 N.E.2d 571, 573 (Ind.Ct.App.1985). However, neither party has cited, nor are we aware of any Indiana authority which disposes of the precise question presented in this case, that is, whether an attorney has the implied authority to settle a case without the authorization or consent of the client.

> \* \* \*

> Nevertheless, we hold that the requirement that an attorney must obtain his client's authority or consent to settle a case is implicit in the client's right to exercise ultimate authority over the settlement of a case as guaranteed by Prof. Cond.R. 1.2(a). Moreover, the rule that an attorney does not have authority to compromise an action merely by virtue of the attorney-client relationship is essentially universal. Eichelberger, Eun-

ice A., *Annotation: Authority of Attorney to Compromise Action—Modern Cases*, 90 A.L.R.4th 326, 333.

> In this case, as in most insurance settlements, both parties understood that there would be no settlement without a release signed by the [claimant], not by his attorney. This understanding was implicit when the draft and the release were tendered together. The insurance company had no enforceable expectation that the claim had, in fact, been settled until Gravens himself had signed the release, which he declined to do.

> Gravens did not authorize his original attorney to settle the case and immediately repudiated the settlement agreement purported to have been reached by that attorney. Under these circumstances, Gravens was not bound by his attorney's agreement and the trial court's entry of summary judgment on this basis was erroneous.

666 N.E.2d at [965–66].

The *Gravens* opinion, which appears to be diametrically inconsistent with the cases cited in this memorandum, but which also expressed unawareness of those cases and so cannot be said to have rejected those cases, leaves the law of Indiana unclear. 979 F.Supp. 1222, 1227–31 (N.D.Ind.1997) (footnotes omitted).[2] See also *Natare Corp. v. Aquatic Renovation Sys. Inc.*, 987 F.Supp. 695, 697–98 (S.D.Ind.1997), in which Chief Judge Sarah Evans Barker noted that "the Indiana Court of Appeals in *Gravens* . . . cast doubt on Indiana's long-standing doctrine that an attorney has authority to bind the client to a settlement without the client's consent. . . ."

### III.

■ We believe that our supreme court's decision in *Ferrara v. Genduso*, cited above, clearly stands for the proposition that a settlement agreement into which an attorney enters is enforceable against his client

---

**2.** Judge Miller's opinion concludes by certifying the following question to the Indiana Supreme Court: "If an attorney settles a claim as to which the attorney has been retained, but does so without the client's consent, is the settlement binding between third parties and the client?" *Koval*, 979 F.Supp. at 1232. Our supreme court accepted this certified question in October of 1997, but it has not yet ruled on this question.

who has not consented to be bound by it. We note that "the Court of Appeals is obliged to follow the precedents established by the Indiana Supreme Court." *Boland v. Greer*, 409 N.E.2d 1116, 1120 (Ind.Ct.App. 1980). We therefore hold that, when an attorney enters into a settlement agreement without his client's consent, the agreement is enforceable against the non-consenting client. We disapprove of *Klebes* and *Gravens* to the extent they conflict with our holding.

## IV.

■ We now address whether sufficient evidence supports the trial court's judgment enforcing Miller's Motion to Enforce Settlement Agreement. Because the trial court did not make findings of fact, "we presume the judgment is based on findings supported by the evidence." *Union Fed. Sav. Bank v. INB Banking Co. S.W.*, 582 N.E.2d 426, 428 (Ind.Ct.App.1991). "We must affirm the trial court's judgment if it can be sustained on any legal theory supported by the evidence[,]" *id.*, and "we consider only the evidence most favorable to the judgment together with all reasonable inferences drawn therefrom." *Id.*

■ Ruffalo's letter to Dabagia of May 17 states that "the parties have agreed to settle their dispute for a lump sum payment of $21,000...." R. 1742. Dabagia's May 20 letter to Ruffalo confirms that "the parties ... have agreed to settle all disputes for a lump sum payment of $21,000.00...." R. 1744. Ruffalo's June 4 letter informs Dabagia that "the terms of the parties' agreement are accurately set forth in [Dabagia's] letter of May 20...." R. 1746. This correspondence is compelling evidence which could warrant a finding that the parties' attorneys reached a settlement agreement disposing of all claims between Plaintiff Miller and the defendants. Because such a settlement agreement can be enforced against the defendants even if they did not consent to be bound by it, sufficient evidence supports the trial court's judgment.

### ATTORNEY FEES

■ The trial court awarded Miller $1000 in attorney fees. The defendants claim that this award was improper. Indiana "follows the American rule which requires each party to litigation to pay his own attorney's fees." *Shumate v. Lycan*, 675 N.E.2d 749, 754 (Ind.Ct.App.1997), *trans. denied.* "Attorney's fees are not recoverable without an express contractual obligation or specific statutory authority stipulating such fees are recoverable." *Id.* Attorney fee awards are authorized by Indiana Code Section 34–1–32–1, which provides that:

> (b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

A defense is frivolous "(a) if it is taken primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law." *Kahn v. Cundiff*, 533 N.E.2d 164, 170 (Ind.Ct.App.1989). A defense is unreasonable "if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the ... defense was worthy of litigation or justified." *Id.* at 170–71. A defense is groundless "if no facts exist which support the legal claim relied on and presented by the losing party." *Id.* at 171. In litigation, bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Figg v. Bryan Rental Inc.*, 646 N.E.2d 69, 76 (Ind.Ct.App.1995) (quoting *Watson v. Thibodeau*, 559 N.E.2d 1205, 1211 (Ind.Ct.App.1990) (quoting *Young v. Williamson*, 497 N.E.2d 612, 617 (Ind.Ct.App.1986))). "The trial court's decision to grant or to deny attorneys' fees will not be disturbed absent an abuse of discretion." *Kovenock v. Mallus,*

660 N.E.2d 638, 643 (Ind.Ct.App.1996), *trans. denied.*

 In defending against Miller's motion, the defendants argued that a settlement agreement could not be enforced against them in the absence of their consent to be bound by it. They cited *Klebes* and *Gravens* in support of their argument, and they put forth evidence which, they claimed, suggested that their consent to be bound was lacking. Although we may disapprove of the legal authority upon which the defendants based their argument, we cannot say that the defense they constructed was illegitimate or without merit. There is no evidence in the record to support a finding that the defendants' litigation of their defense was at any time frivolous, unreasonable, groundless, or conducted in bad faith. The trial court's award of attorney fees is therefore unauthorized by statute, and the trial court abused its discretion by making such an award.

### DISQUALIFICATION OF PLAINTIFF'S COUNSEL

Miller was represented by Attorney Mark Lienhoop at the hearing on her Motion to Enforce Settlement Agreement. Before the hearing began, the defendants moved to disqualify Lienhoop from participation at the hearing. The defendants noted that Attorney Gene M. Jones had conducted the parties' unsuccessful mediation session, and they claimed that Lienhoop, who was a member of Jones' law firm, should not be permitted to participate in the proceedings. The trial court denied the defendants' motion. The defendants, citing Indiana Professional Conduct Rule 1.12,[3] argue that the trial court

erred when it refused to disqualify Attorney Lienhoop.

Because the defendants have failed to allege that Lienhoop's participation in the proceedings prejudiced them, we conclude that the defendants have presented no issue of error here.[4]

Affirmed in part and reversed in part.

HOFFMAN, J., concurs.

SHARPNACK, C.J., concurs in result.

---

3. The defendants direct our attention to the following portions of Indiana Professional Conduct Rule 1.12:

  (a) ... a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person, unless all parties to the proceeding consent after consultation.
  ....
  (c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:

(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and (2) written notice is properly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this Rule.

4. We note that, even if the defendants had alleged that they were prejudiced by Lienhoop's participation in the proceedings, we would nevertheless decline to resolve this issue through application of Indiana Professional Conduct Rule 1.12. Whether this rule has been run afoul of is not for us to decide, but is rather for the Supreme Court to decide. *See* Ind.Admis.Disc.R. 23(1).