ANSTEAD, Judge.
This appeal involves a contest as to the priority of liens on a motor home where the first party claims under a financing statement filed pursuant to the Uniform Commercial Code and the second party subsequently records a first lien on the title certificate. We find the financing statement has priority.
On April 11, 1973, Borg-Warner Acceptance Corporation filed a financing statement pursuant to Section 679.302, Florida Statutes (1973) covering the present and future inventory of Hill’s World of Motor Homes and Campers, Inc., a motor home retailer. On May 23, 1973, Hill’s World acquired a 1973 Allegro motor home from the manufacturer and placed the motor home in its inventory for resale.
On August 31, 1973, the Atlantic Bank of West Orlando loaned Hill’s World the sum of $8,974.08 and filed a financing statement on the motor home without determining whether there were any prior financing statements on file. Atlantic then made ap *36 plication with the Department of Motor Vehicles for a title certificate which was issued on January 29, 1974, indicating Hill’s World as owner and Atlantic as the first lien holder. As a further complication, Hill’s World sold the motor home on October 9, 1973, to Ronald Chestney. Borg-Warner financed the sale and was given a purchase money security interest in the motor home. Chestney subsequently sold the motor home to Robert C. Postle who assumed responsibility for the Borg-Warner loan. When Hill’s World subsequently defaulted on its loan, Atlantic filed a declaratory decree action seeking, among other things, a determination that its lien was superior to Borg-Warner’s. The trial court granted a summary final judgment on that issue for Atlantic and this appeal followed.
Atlantic contends that its lien is superior by virtue of the provisions of Section 319.-27(2) of the Florida Statutes which provides:
No lien for purchase money or as security for a debt in the form of retail title contract, conditional bill of sale, chattel mortgage, or other similar instrument, upon a motor vehicle, as now or may hereafter be defined by law, upon which a certificate of title has been issued in this state shall be enforceable in any of the courts of this state, against creditors or subsequent purchasers for a valuable consideration and without notice, unless a sworn notice of such lien showing the following information:
(a) Date and amount of lien;
(b) Kind of lien;
(c) Name and address of registered owner;
(d) Description of motor vehicle, showing make, type, and serial number; and
(e) Name and address of lien holder; has been filed in the department and such lien has been noted upon the certificate of title covering such motor vehicle, and shall be effective as constructive notice when filed. (Emphasis supplied)
Atlantic also relies on Section 679.302(4) which provides:
A security interest in property covered by a statute described in subsection (3) can be perfected only by registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official.
On the other hand, Borg-Warner asserts that Chapter 319 does not apply to this transaction, citing Section 319.27(1), Florida Statutes, which provides:
All liens, mortgages and encumbrances on motor vehicles titled in Florida shall be noted upon the face of the certificate of title as and when issued in Florida or on a duplicate or corrected copy thereof, as is now provided by law; provided, however, that this section shall not apply to any retain title contract, conditional bill of sale, chattel mortgage or other like instrument covering any motor vehicle floor plan stock of any motor vehicle dealer. . . . (Emphasis supplied)
Borg-Warner contends that the security interest filing provisions of the Uniform Commercial Code, Section 679.302(3)(b), Florida Statutes, control:
The filing provisions of this chapter do not apply to a security interest in property subject to a statute:
(b) Of this state which provides for central filing of security interest in such property, or in a motor vehicle which is not inventory held for sale for which a certificate of title is required under the statutes of this state . . . . (Emphasis supplied)
While neither party, or the court, has found a case precisely on point, both rely on the legal maxim that where one of two persons must suffer through the fraud of a third person (Hill’s World) the one who made the fraud possible should bear the loss. Correria v. Orlando Bank and Trust Company, 235 So.2d 20 (Fla. 4th DCA 1970).
Borg-Warner claims that Atlantic should have determined whether there were any prior financing statements on the motor home prior to entering into its loan agreement with Hill’s World. Atlantic claims that Borg-Warner’s failure to secure and hold the manufacturer’s certificate of *37 origin, which would have prevented a title, certificate from being issued, bars Borg-War ner’s claim.
The parties agree that the inventory financing arrangement between Borg-Warner and Hill’s World was a standard acceptable plan of commercial financing of the inventory of Hill’s World. At the time Borg-Warner entered into this financing arrangement and filed the financing statement on Hill’s World inventory, no title certificate or manufacturer’s certificate of origin was in existence. Accordingly, the .only method available to Borg-Warner to protect its lien rights was to file a financing statement pursuant to the Uniform Commercial Code.
Both the Uniform Commercial Code, Chapter 679, and the Motor Vehicle Title Certificates statute, Chapter 319, provide that the lien recording provisions of Chapter 679, rather than the provisions of Chapter 319, shall govern liens on motor vehicles held as inventory. See Sections 319.27(1) and 679.302(3)(b), supra.
At the time of its loan to Hill’s World, Atlantic knew that there had been no title certificate issued. Accordingly, Atlantic could not look to the title certificate to find a record of any prior liens. However, Atlantic itself filed a financing statement pursuant to the UCC, Chapter 679, apparently aware that this was the only way of recording a notice of its lien prior to the issuance of a title. Atlantic at that point was in the same position that Borg-Warner had been previously when filing its financing statement on Hill’s World’s inventory. Just as Atlantic relied on this financing statement to secure its lien, we think Borg-Warner, as to Atlantic, was entitled to rely on its financing statement as a notice to Atlantic of its prior lien.
Atlantic also claims that it is entitled to the protection of Section 679.307(1) which provides that a buyer in the ordinary course of business takes free of any security interests created by the seller. It claims that once a title certificate was issued on the motor vehicle, it was no longer inventory and Borg-Warner’s lien no longer attached, just as would be the case if the motor vehicle was sold to a good faith purchaser. We disagree.
Section 671.201(9) defines a buyer in the ordinary course of business as:
a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker.
Atlantic was not a buyer in the ordinary course of business. Atlantic did not purchase the vehicle but rather attempted to use the vehicle, which remained with and was titled to Hill’s World, as security for a loan, just as Borg-Warner used the vehicle. Section 679.306(2) provides:
Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.
Hence, in this case, Borg-Wamer’s security interest continued absent a sale to a buyer in the ordinary course of business under Section 679.307(1).
The path we have taken through the thicket of the provisions of Chapters 319 and 679 is a narrow one intended to apply only to the factual circumstances presented here. We find no conflict between the provisions of the chapters under these circumstances. Rather, we find the statutes themselves provide for reliance on Chapter 679.
Accordingly, the judgment of the trial court is hereby reversed with directions that judgment be entered in favor of the appellant, Borg-Warner Acceptance Corporation.
DOWNEY, C. J., and MINER, CHARLES E., Associate Judge, concur.