**In the Matter of FREEDOM RENTAL & LEASING, INC., Debtor.**

**John D. MENKEL, Trustee, Plaintiff(s),**

**v.**

**SUN BANK AND TRUST CO., f/k/a Hernando State Bank, Defendant.**

**Bankruptcy No. 85–2835–8B7. Adv. No. 89–14.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 30, 1989.

Mark J. Bernet, for plaintiff.

Joseph G. Heyck, Jr., Charlie Luckie, Jr., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for consideration upon a two-count Complaint filed by the Trustee in the above-styled adversary proceeding. Count I of the Complaint seeks recovery of a prepetition setoff pursuant to Section 553(b)(1) of the Bankruptcy Code. Count II seeks invalidation of a lien pursuant to Section 544 of the Bankruptcy Code. Motions for summary judgment were filed by both parties subsequent to the pre-trial hearing. The Court considered the motions along with the record, found a genuine issue of material fact exists as to Count I, and denied both motions for summary judgment on the issue of setoff. The motions for summary judgment as to Count II were taken under advisement. The facts rele-vant to Count II of the Complaint are as follows.

This Chapter 7 Debtor was in the business of renting and leasing automobiles. The Debtor's inventory of vehicles was financed by the Defendant as evidenced by a $550,000.00 note executed and delivered to the Defendant on September 20, 1983. To secure payment under the note, a security agreement entitled "Dealer's Inventory" was executed by the parties. The agreement specifically described the scope of the collateral as "not more than 50 rental automobiles owned by Debtor."

On January 18, 1985, the Bank filed a UCC–1 Financing Statement with the Secretary of State pursuant to Fla.Stat. § 679.302. The UCC–1 Financing Statement appears to cover the universe by generally describing the collateral as "all motor vehicles of every kind and nature." In addition to filing the UCC–1, the Defendant also utilized other avenues to protect its investment. The Executive Vice President of the Bank attested that the Bank (1) retained in its possession either the Certificate of Origin in transferable form, the executed title in transferable form, or title with lien noted thereon in favor of Sun Bank and Trust; and (2) disbursed the funds to the Debtor on a vehicle-by-vehicle basis. When a vehicle was sold by the Debtor, the loan balance attributable to that vehicle was paid to the Bank and the Certificate of Origin or Title Certificate was released and delivered to the Debtor. The Court also notes Paragraph (1)(c) of the security agreement provides that in the event Debtor disposed of, sold or assigned any unit included in the inventory, the Debtor was required to replace the unit with one of a similar value simultaneously with the release of the unit from the security agreement.

The Debtor's obligation to the Bank was eventually satisfied in full on September 18, 1985, when the Debtor delivered a check to the Bank. The Defendant released and delivered to the Debtor all titles and/or manufacturer's Certificates of Origin that were in its possession.

Several weeks later, on October 7, 1985, the Debtor filed a Chapter 11 case which was subsequently converted to Chapter 7 on April 7, 1988. The Trustee's Complaint, filed on January 5, 1989, alleges the Defendant failed to perfect its security interest in the collateral by failing to comply with Florida Statute § 319.27.[1]

The Trustee contends Fla.Stat. § 319.27 controls the general procedure for perfecting a security interest in Florida. That section requires (1) a sworn notice of lien be filed, *see, Hardwick v. Petsch (Matter of Petsch)*, 82 B.R. 605 (Bankr.M.D.Fla.1988), and (2) the lien be noted on the certificate of title. *See, Smith v. City of Miami Beach*, 440 So.2d 611 (Fla. 3d DCA 1983). Since the Defendant failed to comply with Fla.Stat. § 319.27, the Defendant's security interest has not been perfected. As such, the lien is voidable pursuant to Section 544 of the Bankruptcy Code.

A narrow exception exists to the general requirement of Section 319.27. This exception applies only to one who holds a security agreement covering the motor vehicle floor plan stock of a licensed dealer. The Trustee recognizes the exception but contends the Debtor does not fall within the scope of the term "motor vehicle dealer" as defined by Fla.Stat. § 320.27(1)(c).[2]

The Trustee contends the Debtor is not a dealer as defined by Section 320.27(1)(c) since "the Debtor is not substantially in the business of selling vehicles." In addition, the Debtor's business is identified on its bankruptcy schedules as a business which *leases* and *rents* vehicles. To support this position, the Trustee discounts the literal meaning of Section 320.27 which incorporates the term "lease-purchase" in the definition of "sale".

The Trustee contends the exception to the general rule stated in Section 679.-302(3)(b) applies only to inventory held for sale, and not to inventory held for lease. Specifically, the security interest must be in motor vehicle inventory held for sale by a person in the business of selling motor vehicles if perfection is to be effectuated by the filing of a UCC-1 Financing Statement rather than pursuant to notation of the lien on the face of the certificate of title. The Trustee places significant emphasis on the distinction between inventory held for sale and inventory held for lease, arguing (1) the intention of the drafters of the U.C.C. and the Florida Statute was to distinguish between the two terms and (2) the Statute should be given its plain meaning. The Trustee's interpretation is simple. A sale is a sale and a lease is something entirely different. The Trustee distinguishes this case from other cases cited by the Defendant which support the concept of "central filing." *See, In re Sea Island Motor Sales, Inc.*, 72 B.R. 170 (Bankr.S.C. 1986); *McDonald v. Security Nat'l Bank and Trust Co. of Norman (In re McGetrick)*, 31 B.R. 294 (Bankr.W.D.Okla.1983); *Central Nat'l Bank of Mattoon v. Worden–Martin, Inc.*, 90 Ill.App.3d 601, 46 Ill. Dec. 99, 413 N.E.2d 539, 30 U.C.C.Rep. Serv. 1140 (4th DCA 1980). *Central National Bank of Mattoon* and *In re Sea Island Motor Sales* do not involve rental and leasing companies. *In re McGetrick*

---

**1.** Fla.Stat. § 319.27(2) provides: No lien for purchase money or as security for a debt in the form of a security agreement, ... or other similar instrument upon a motor vehicle ... upon which a Florida certificate of title has been issued shall be enforceable in any of the courts of this state against creditors or subsequent purchasers for a valuable consideration and without notice, unless a sworn notice of such lien has been filed in the department and such lien has been noted upon the certificate of title of the motor vehicle ...

**2.** Fla.Stat. § 320.27(1)(c) provides: "Motor vehicle dealer" means any person engaged in the business of buying, selling, or dealing in motor vehicles or offering or displaying motor vehicles for sale at wholesale or retail. Any person who buys, sells or deals in three or more motor vehicles in any 12–month period or who offers or displays for sale three or more motor vehicles in any 12–month period shall be prima facie presumed to be engaged in such business. The terms "selling" and "sale" include lease-purchase transactions ... The term "motor vehicle dealer" does not include persons not engaged in the purchase or sale of motor vehicles as a business who are disposing of vehicles acquired for their own use or for use in their business ... and motor vehicle rental and leasing companies that sell motor vehicles to motor vehicle dealers licensed under this section."

must also be distinguished due to statutory differences.

Conversely, the Defendant argues there is no distinction between inventory held for sale and inventory held for lease. It contends the term "lease purchase" is included in the term "selling" and "sale," Fla.Stat. §§ 319.001(2) and 320.27(10)(c), and therefore the filing of the financing statement on January 18, 1985 was sufficient to properly perfect the security interest in the collateral.

There is a dearth of Florida case law interpreting the perfection requirements of the Florida Motor Vehicle Statute and the Florida Uniform Commercial Code. There exists no case law on this issue as it relates to an automobile renting and leasing business. The Court finds Chapters 319 and 679 are not mutually exclusive Statutes but must be read together. The appropriate starting point is the Florida Uniform Commercial Code which provides the general rule for perfecting a security interest in collateral. Fla.Stat. § 679.302. *See Borg–Warner Acceptance Corp. v. Atlantic Bank of West Orlando*, 364 So.2d 35, 37 (Fla. 4th DCA 1978). In *Borg–Warner*, the Court held,

> Both the Uniform Commercial Code, Chapter 679, and the Motor Vehicle Title Certificates statute, Chapter 319, provide that the lien recording provisions of Chapter 679, rather than the provisions of Chapter 319, shall govern liens on motor vehicles held as inventory.

*supra* at 37.

The filing of a financing statement is generally mandatory in order to perfect a security interest in collateral. Fla.Stat. § 679.302. However, if the property is subject to Fla.Stat. ch. 319, perfection is attained by complying with that Section with exceptions. Fla.Stat. § 679.302(3)(b). Both Fla.Stat. §§ 679.302(3)(b) and 319.-27(1) have similar inventory exceptions.

The arguments of both the Trustee and the Bank suggest a rather circular and non-dispositive result to the inquiry of how Fla.Stat. chs. 679 and 319 interact. The analysis starts under the Uniform Commercial Code as adopted by Fla.Stat. ch. 679.

In order to perfect a lien on personalty, a financing statement must be filed with the proper agency. The exception under § 679.302(3)(b) provides perfection of a security interest in a motor vehicle shall be in accordance with Chapter 319. Fla.Stat. § 679.302(3)(b). Chapter 319 does not apply to "any security agreement, retained title contract, conditional bill of sale contract, chattel mortgage, or other like instrument covering any motor vehicle or mobile home floor plan stock of any licensed dealer." Fla.Stat. § 319.27(1). Further, Chapter 319 is not operative in the case where "...collateral is held as *inventory* for sale by a person who is in the business of *selling* goods of that kind ..." (Emphasis added). Fla.Stat. § 679.302(3)(b). In other words, there are two exceptions, which, if applicable, would demand a conclusion that the filing of a UCC–1 Financing Statement is the correct method of perfecting a security interest. The first exception, which is germane to this case applies to a licensed dealer. Fla. Stat. § 319.27(1). The other exception applies to inventory held for sale by a person in the business of selling such goods. Fla. Stat. § 679.302(3)(b). Both exceptions deal with inventory floor plan financing. The difference, however, is that Section 679.302 pertains to inventory financing where a business sells inventory. The exception in Fla.Stat. § 319.27(1) excludes all inventory financing of licensed dealers. If either exception applies, then the filing of the UCC–1 by the Bank to perfect its security interest was correct.

Applying this interpretation to this case, the Court finds a creditor, in order to perfect its lien on its floor planning of leased vehicles, would initially consider Fla.Stat. ch. 679 in order to perfect its lien. Section 679.302(3)(b) indicates that Fla.Stat. ch. 679 would not be applicable if perfection could take place under Fla.Stat. ch. 319. Once reaching this juncture, this Court must determine whether there is an exception to perfection under chapter 319. The answer to this query is yes. One exception relates to a licensed dealer. If the Debtor in the instant case is a licensed dealer, the perfec-

tion must be made by filing a UCC–1 Financing Statement. If the Debtor is not a licensed dealer, perfection must be made pursuant to Section 319.27 unless the second exception applies. If the collateral is held as inventory for sale by a person who is in the business of *selling* goods of that kind, then perfection pursuant to Section 319.27 is ineffective. Instead, perfection must be made pursuant to the general rule of Fla.Stat. § 679.302(1) which requires the filing of a UCC–1 Financing Statement.[3]

The pivotal question is whether the property is subject to Fla.Stat. § 319.27(1). This section states:

> Each lien, mortgage, or encumbrance on a motor vehicle ... titled in this state shall be noted upon the face of the Florida certificate of title ... however, this section does not apply to any security agreement ..., or other like instrument covering any motor vehicle or mobile home floor plan stock of any licensed dealer....

The answer turns on whether the Debtor is a licensed dealer. Fla.Stat. § 319.27 does not apply to any security interest covering any motor vehicle floor plan of any licensed dealer. Fla.Stat. § 319.27(1). A "licensed dealer" means a motor vehicle dealer licensed under Section 320.27. Fla.Stat. 319.001(2). The Defendant establishes in it's uncontroverted affidavit the Debtor was a licensed motor vehicle dealer. The Court is satisfied the matter can be determined as a matter of law inasmuch as there exists no issue of material fact as to whether the Debtor was a licensed dealer at the time the UCC–1 financing statement was filed.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED the Motion for Summary Judgment filed by Plaintiff, Trustee John D. Menkel, be, and the same is hereby, denied as to Count II. It is further

ORDERED, ADJUDGED AND DECREED the Motion for Summary Judgment filed by Defendant, Sun Bank and Trust Co., f/k/a Hernando State Bank be,

and the same is hereby granted as to Count II. It is hereby determined Defendant had a perfected security interest in the Debtor's inventory.

A separate final judgment shall be entered in accordance with the foregoing.

DONE AND ORDERED.

---

**3.** The Court believes the two exceptions may, in operation, be identical in most cases; however, we will have to await a case which would establish the distinction.