**In re CARCORP, INC., Debtor.**

**Carcorp, Inc., Plaintiff,**

**v.**

**Bombardier Capital, Inc., Defendant.**

**Bankruptcy No. 01–23742–BKC–PGH.**
**Adversary No. 01–02275–BKC–PGH–A.**

United States Bankruptcy Court,
S.D. Florida.

Jan. 22, 2002.

Gary A. Goldstein, Robert Gershman, West Palm Beach, FL, for debtor/plaintiff.

Charles W Throckmorton, Miami, FL, for defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEBTOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PAUL HYMAN, Jr., Bankruptcy Judge.

**THIS MATTER** came before the Court on October 18, 2001, upon Carcorp, Inc.'s (the "Debtor") Motion for Partial Summary Judgment against Bombardier Capital, Inc. (the "Defendant"). On November 13, 2001, the Defendant filed a Response to the Debtor's Motion for Partial Summary Judgment (the "Response"), and a Cross–Motion for Partial Summary Judgment. On November 23, 2001, the Debtor filed a Response to Defendant's Response to the Debtor's Motion for Partial Summary Judgment (the "Reply"). On November 23, 2001, the Debtor and the Defendant filed a Joint Stipulation of Facts (the "Stipulation of Facts"). Finally, the Court heard oral argument on the Debtor's Motion on December 14, 2001.

The Court finds that because there are no material facts in dispute, summary judgment is appropriate. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Rice v. Branigar Org., Inc.*, 922 F.2d 788, 790 (11th Cir.1991). Having reviewed the Motion for Partial Summary Judgment, the Response, the Reply, and the Stipulation of Facts, and having heard the representations of counsel at oral argument, the Court hereby enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The Debtor herein, Carcorp, Inc. (the "Debtor"), filed a petition for relief under Chapter 11 of the Bankruptcy Code on

May 18, 2001. Pursuant to §§ 1107 and 1108 of the Code, the Debtor is currently operating its business as a debtor in possession.

Prior to filing for bankruptcy, the Debtor was engaged in the business of selling and leasing vehicles to consumers. The Debtor financed its operations primarily by selling leases to Bombardier Capital, Inc. ("BCI"). The leases were sold with recourse, and the Debtor's recourse obligations were secured by a security interest in the vehicles pursuant to a document entitled the Master Purchase Agreement ("MPA").

Under the MPA, once the Debtor leased a vehicle from its inventory, BCI had the option to buy the lease from the Debtor. If BCI exercised this option, BCI would "reimburse" the Debtor for the purchase price of the vehicle. Consequently, BCI was then authorized to note a lien on the vehicle at issue (the "Vehicles"). In order to perfect this lien, the Debtor was required to note BCI's lien on the face of the certificates of title of the Vehicles. BCI did not, however, file a UCC–1 financing statement with respect to its lien on the Vehicles. At all relevant times, the Vehicles were titled in the name of the Debtor. Pursuant to the MPA, BCI financed approximately 1,200 leases.

On September 7, 2001, the Debtor filed a Complaint to Set Aside and Invalidate Liens, to Recover Property of the Debtor, and for a Turnover of Debtors Assets and for Other Relief (the "Complaint"). In the Complaint, the Debtor asserts that it has superior right, title and interest to the Vehicles in which BCI had its lien noted, and that the Debtor is the owner of the Vehicles free and clear of any right, lien, title and interest of BCI.

The Motion for Partial Summary Judgment seeks a determination that BCI never properly perfected its security interest in the Vehicles. In its Motion for Partial Summary Judgment, the Debtor argues that under Florida Statutes §§ 319.27 and 679.302, BCI was required to file a UCC–1 financing statement in order to properly perfect its security interest in the Vehicles. Having failed to comply with this requirement, it is the Debtor's position that BCI does not have a valid lien on the Vehicles.[1]

The Response argues that BCI was not required to file a UCC–1 financing statement in order to properly perfect its security interest in the Vehicles. Under Florida Statutes §§ 319.27 and 679.302, the filing of a UCC–1 is required in two circumstances: (1) where the lien is on the floor plan stock of a licensed dealer; or (2) where the lien is on inventory held for sale by a person in the business of selling goods of that kind. It is BCI's position that neither one of these scenarios apply; therefore, BCI was properly perfected upon notation of their lien on the certificates of title.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(b)(1), and 157(b)(2)(I). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I).

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056(c), provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

1. It should be noted that the Debtor's Motion does not seek to avoid BCI's lien on the leases.

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rice v. Branigar Org., Inc.,* 922 F.2d 788, 790 (11th Cir.1991); *Buzzi v. Gomez,* 62 F.Supp.2d 1344, 1349 (S.D.Fla.1999). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. *See United States v. Feinstein,* 717 F.Supp. 1552 (S.D.Fla.1989). In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555 (citing Fed R. Civ. P. 1). "Summary judgment is appropriate when, after drawing all reasonable inference in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Salkin v. Slobodinsky (In re Saber),* 233 B.R. 547, 551 (Bankr.S.D.Fla. 1999) (citing *Murray v. Nat'l Broad. Co.,* 844 F.2d 988, 992 (2d Cir.1988)).

The legal standard governing the entry of summary judgment has been articulated by the United States Supreme Court in *Celotex* and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Celotex* and *Anderson,* the Supreme Court focused on the question of what constitutes a genuine issue of material fact within the meaning of Rule 56. In *Celotex,* the Court held that the moving party may satisfy the burden imposed by Rule 56 in two ways: the moving party may submit affidavit evidence that negates an essential element of the non-moving party's claim and/or the moving party may demonstrate that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *See Celotex,* 477 U.S. at 328, 106 S.Ct. 2548.

In *Anderson,* the Court stated that the standard for summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which provides that the trial judge must direct a verdict if there can be but one reasonable conclusion as to the verdict. *See Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The Court explained that the inquiry under summary judgment and directed verdict are the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

In order to defeat a motion for summary judgment under this standard, the non-moving party must do more than simply show that there is some doubt as to the facts of the case. *See id.* at 252, 106 S.Ct. 2505. Rule 56 must be construed not only with regard to the party moving for summary judgment but also with regard to the non-moving party and that party's duty to demonstrate that the movant's claims have

no factual basis. *See id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* Thus, the non-moving party must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed fact to prevent a court's entry of summary judgment. *See First Nat. Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Resolution Trust Corp. v. Clark,* 741 F.Supp. 896, 897–98 (S.D.Fla.1990); *Pierre v. Welfare (In re Pierre),* 198 B.R. 389, 391–92 (Bankr. S.D.Fla.1996).

## I. BCI Never Properly Perfected its Security Interest in the Vehicles.

 Florida Statutes § 679.302 sets forth the rules for perfecting security interests. Perfection is normally achieved by filing a financing statement. Fla. Stat. § 679.302. However, security interests in motor vehicles are not, as a general rule, perfected by filing a financing statement. Fla. Stat. § 679.302(3)(b). Rather, a security interest in a motor vehicle is perfected by the secured party noting its interest on the certificate of title. Fla. Stat. § 679.302(3)(b); Fla. Stat. § 319.27(1). But this rule is also subject to exception. Where the motor vehicle is part of a motor vehicle dealer's inventory, perfection is achieved by filing a financing statement. Fla. Stat. § 679.302(3)(b); Fla. Stat. § 319.27(1).

Relevant to the present analysis, Florida Statutes § 679.302 provides in part:

(1) A financing statement must be filed to perfect all security interests except the following:

. . . .

(3) The filing of a financing statement otherwise required by this chapter is not necessary or effective to perfect a security interest in property subject to:

. . . .

(b) **The following statutes of this state: chapters 319 and 328; but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this chapter (part IV) apply to a security interest in that collateral created by him or her as debtor;**

Fla. Stat. § 679.302 (1998) (emphasis added).

Florida's Certificate of Title Statute § 319.27(1) provides in pertinent part:

Each lien, mortgage, or encumbrance on a motor vehicle or mobile home titled in this state shall be noted upon the face of the Florida certificate of title or on a duplicate or corrected copy thereof, as provided by law; however, **this section does not apply to any security agreement, retain title contract, conditional bill of sale, chattel mortgage, or other like instrument covering any motor vehicle or mobile home floor plan stock of any licensed dealer.**

Fla. Stat. § 319.27(1)(2000)(emphasis added).

 Read together, these statutes provide that a lien on a motor vehicle is to be perfected through recording it on the certificate of title pursuant to § 319.27, rather than the filing of a UCC–1 financing statement, unless either: (1) it is a lien on the floor plan stock of a licensed dealer; or (2) it is a lien on inventory held for sale by a person in the business of selling goods of that kind. *See Menkel v. Sun Bank & Trust Co. (In re Freedom Rental & Leasing, Inc.),* 102 B.R. 848, 851 (Bankr. M.D.Fla.1989); *Borg–Warner Acceptance*

*Corp. v. Atlantic Bank of West Orlando,* 364 So.2d 35, 37 (Fla. 4th DCA 1978).

BCI's first argument is that they did not provide floor plan financing to the Debtor, and therefore they were not seeking a lien on the "floor plan stock" of a licensed dealer. As such, it is BCI's position that they were not required to file a UCC–1 financing statement, and that the proper method of perfection is through notation on the Vehicles certificates of title. Next, BCI argues that their security interest is not in "inventory" at all. Rather, BCI argues that their security interest is in "equipment" as defined under the MPA. Finally, BCI asserts that there is a factual dispute as to whether the Debtor entered into a floor planning agreement with BCI, therefore making summary judgement inappropriate. Each of BCI's arguments shall be addressed in turn.

### A. BCI's Lien is on the Floor Plan Stock of a Licensed Dealer.

■ The present case raises an issue of first impression before this Court; to-wit, does the phrase "floor plan stock" as used in § 319.27 refer to dealer floor plan financing, or merely refer to the inventory of a licensed dealer? The crux of BCI's first argument is that they did not provide floor plan financing to the Debtor, and therefore they do not have a lien on the "floor plan stock" of a licensed dealer. Essentially, it appears that under BCI's reading of § 319.27, BCI would have needed to provide purchase money financing before the filing requirement would apply. As there is no Florida case law on this issue, the Court must analogize to vehicle titling statutes from other states, as well as Article 9 of the Uniform Commercial Code in order to define the phrase "floor plan stock" as used in § 319.27.

The analogous U.C.C. provision that would apply is U.C.C. § 9–302(3)(b)

(U.C.C. § 9–311 in Revised Article 9) which states:

(1) A financing statement must be filed to perfect all security interests except the following:

. . . .

(3) The filing of a financing statement otherwise required by this Article is not necessary or effective to perfect a security interest in property subject to

. . . .

(b) the following statutes of this state; [list any certificate of title statute covering automobiles, trailers, mobile homes, boats, farm tractors, or the like, and any central filing statute]; **but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this Article (Part 4) apply to a security interest in that collateral created by him as debtor**

The official commentary to the 1972 revision to the Model U.C.C., which added U.C.C. § 9–302(3)(b), states:

[T]he certificate of title procedure does not control the perfection of inventory or 'floor plan' security interests, but instead normal Code filing rules are applicable.

U.C.C. § 9–302 cmt. (1995).

Whether the collateral secured under the MPA is a widget or a winnebago, the rationale behind the directive of U.C.C. § 9–302(3)(b) is the same; once the collateral becomes inventory in the hands of the debtor, the filing of a financing statement is required to properly perfect the security interest. Section 9–302's mandate is further illustrated by looking to California's equivalent to Florida's certificate of title statute. California Statute § 9302(3) states that:

The filing of a financing statement otherwise required by this division is not necessary or effective to perfect a security interest in property subject to any of the following:

. . . .

(b) The provisions of the Vehicle Code which require registration of a vehicle or boat, or provisions of the Health and Safety Code which require registration of a mobilehome or commercial coach; **but during any period in which collateral is inventory, the filing provisions of this division (Chapter 4 (commencing with Section 9401)) apply to a security interest in that collateral.**

Cal. Com.Code § 9302(3)(b) (West Supp.2001)(emphasis added).

In comparing the two statutes it is clear that the carve out in Florida Statutes § 319.27 simply reinforces the general requirement for the filing of a UCC–1 financing statement to perfect a security interest in inventory. In *Menkel v. Sun Bank & Trust Co. (In re Freedom Rental & Leasing, Inc.)*, 102 B.R. 848 (Bankr. M.D.Fla.1989), the court stated that "the two exceptions may, in operation, be identical..." *Id.* at 852 n. 3. This Court similarly finds that the inventory exceptions to Florida Statutes §§ 319.27 and 679.302 operate in an identical manner.

Under Florida law, the Court finds that "Dealer floor plan stock" is a term of art which refers to a dealer's inventory, regardless of whether that inventory was financed by the creditor holding the security interest in it. It is worth noting that California's certificate of title statute is even narrower than Florida's statute, thus further emphasizing the need to file a financing statement. "In California, the UCC–1 filing requirement applies whenever a vehicle is held as inventory, whether by a dealer or any other person, and irrespective of whether the vehicle is held for sale." *Simon v. Chrysler Credit Corp. (In re Babaeian Transp. Co.)*, 206 B.R. 536, 545 (Bankr.C.D.Cal.1997). It is further important to note that Revised U.C.C. § 9–311(d) adopts a rule similar to both California and Florida's rule by extending the filing requirement to inventory held for lease as well as inventory held for sale. *See* Fla. Stat. § 320.27(1)(c) (2001); *In re Freedom Rental,* 102 B.R. at 852.

In *Freedom Rental,* the Chapter 7 trustee sought to invalidate a lending bank's lien on vehicles held for lease by the debtor. *Id.* at 850. The bank had filed a UCC–1 financing statement instead of noting its lien on the certificate of title. The trustee argued that the exception to the general rule stated in ·§ 679.302(3)(b) applies only to inventory held for sale, and not inventory held for lease. *Id.* The court held that as long as the debtor is a licensed dealer, § 679.302(3)(b) applies regardless of whether the inventory is being held for sale or lease. *Id.* at 852.

The rationale behind the different filing requirements can be explained in one word: Notice. The difference in the notice supplied by the filing of a financing statement versus notation on the vehicle's title is best understood by keeping in sight the nature of the differing debtor's interest in the collateral. A debtor who is a dealer in goods of the kind secured has a commercial interest in the collateral. As such, the notice must be global in nature; it follows that central filing will be more effective. "Notice filing allows a potential creditor to discover whether the borrower's personalty is already encumbered and to stake a claim to the collateral should it decide to extend credit." *Budsberg v. Premier Credit Co. (In re Kincaid),* 218 B.R. 965, 968 (Bankr.W.D.Wash.1998). Furthermore, in the hands of a commercial debtor the collateral is more susceptible to being collateralized for additional debts.

Central filing will better notify other commercial dealers who are familiar with the filing requirements for a secured transaction.

Conversely, a consumer debtor has a personal stake in the collateral. The certificate of title is an indicia of ownership, and the consumer debtor is likely to use it as such. The consumer debtor's most likely disposition of the collateral is by sale to another consumer debtor. In any consumer transaction, the consumer debtor will be required to present a certificate of title. As such, notation on the vehicle title is more likely to put a less sophisticated buyer on notice of a competing lien. A vehicle purchaser may rely on the certificate of title, and is not expected to check a centralized set of records to determine whether a security interest has been recorded. *In re Babaeian Transp. Co.*, 206 B.R. at 542.

The pivotal question for this Court is which type of transaction does the MPA more accurately represent: is it more like a commercial transaction, or does it better resemble a transaction which takes place in the consumer arena? In the present case, the arrangement between BCI and the Debtor was clearly a commercial transaction. As discussed *infra* in greater detail, the Court additionally finds that the collateral secured under the MPA was inventory of the Debtor. With the Court's finding that the phrase "Dealer floor plan stock" refers to a dealer's inventory, and with the Court further finding that the Vehicles were the inventory of a licensed dealer, it follows, *a fortiori*, that BCI's lien is on the floor plan stock of a licensed dealer. Consequently, the filing of a UCC–1 financing statement was necessary to properly perfect BCI's security interest in the Vehicles.

The very fact that this issue is even debatable lends to the conclusion that a financing statement should have been filed. *Cf. Woodson v. Utica Square Nat'l Bank of Tulsa (In re McClain)*, 447 F.2d 241, 244–45 (10th Cir.1971)(stating that "a creditor in doubt about the proper classification of collateral should file in all possible counties where filing might be required.") If there was any doubt as to the proper method of perfection, out of an abundance of caution, BCI should have filed a financing statement as well as noting its lien upon the face of each Vehicle's certificate of title.

### B. BCI's Lien is on Inventory Held for Lease or Sale by the Debtor.

BCI's second argument is that their security interest is not in "inventory" at all. Rather, BCI argues that their security interest is in "equipment" as defined under the MPA. Under the MPA, equipment is defined as:

> any one or more items of machinery, equipment, motor vehicles, buses, trucks and any and all personal property that is acquired by Borrower, in whole or in part, with the Purchase Price under an Assignment, and all accessories, additions, attachments, replacements and substitutions therefor and additions thereto.

MPA at ¶ 1(f).

■ First, it is important to note that the parties classification of the collateral under the MPA is not dispositive, it does not conclusively resolve this issue. *See Amvest Funding Co. v. Rex Group, Inc. (In re Rex Group, Inc.)*, 80 B.R. 774, 781 (Bankr.E.D.Va.1987)(stating that "statements in a security agreement are not conclusive evidence of the owner's intended use of the collateral.") Second, the definition under the MPA is completely inapposite to the definitions for inventory and equipment under the U.C.C. Section

9–109 of the U.C.C. provides in pertinent part that:

> Goods are-
>
> . . . .
>
> (2) 'equipment' if they are used or bought for use primarily in business (including farming or a profession) or by a debtor who is a non-profit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods;
>
> . . . .
>
> (4) 'inventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment.

U.C.C. § 9–109 (1972); *accord* Fla. Stat. § 679.109 (1997).

■ The principal test used in classifying the collateral is to determine the owner's intended use of the collateral. *In re Babaeian Transp., Co.*, 206 B.R. at 546 (citing *Lebron v. Mechem Fin., Inc.*, 125 B.R. 151, 152 (Bankr.W.D.Pa.1991)). In particular, the intent of the debtor at the time the transaction was entered into will control. *See* 4 James J. White & Robert S. Summers, Uniform Commercial Code § 31–15, at 187–88 (4th ed.1995).

■ In the case *sub judice* it is undeniable that the Debtor's intent was to either sell or lease the Vehicles; the parties stipulated to such at oral argument. In addition, the Debtor has submitted into evidence a copy of its dealers license; this too was stipulated by the parties. The record is replete with facts necessary to make the determination that the Debtor, as a licensed dealer, intended to use the Vehicles in question as inventory.

■ BCI further asserted at oral argument that even if the Court determines that the Vehicles are inventory of the Debtor, the Vehicles do not meet the definition of inventory under the U.C.C. Specifically, BCI contends that the Vehicles were not "[held] for sale or lease" at the time BCI entered into the transactions with the Debtor. BCI argues that the transactions were consummated after the Vehicles had already been leased to bona fide lessees.

On its face, this argument seems well-grounded, however, it too must fail. BCI fails to point out that the MPA itself provides for the leased vehicles to be returned to the Debtor upon a lessee's default. It is this reversionary, or residuary interest that the Debtor retains in the Vehicles which is axiomatic to the Court's finding that the Vehicles were inventory of the Debtor. Under the MPA, the Debtor was required to repossess and re-sell or re-lease the now off-lease Vehicles still under the auspices of the MPA. As such, the Court finds that the Vehicles were inventory as defined under U.C.C. § 9–109.

■ Finally, Florida Statutes § 679.302(3)(b) states that a financing statement needs to be filed to perfect a security interest in "inventory *held for sale* by a person who is in the business of *selling* goods of that kind." Fla. Stat. § 679.302(3)(b)(emphasis added). As discussed previously, the court in *Freedom Rental* has made it clear that § 679.302(3)(b) applies equally to goods held for sale and goods held for lease. *Menkel v. Sun Bank & Trust Co. (In re Freedom Rental & Leasing, Inc.)*, 102 B.R. 848, 852 (Bankr.M.D.Fla.1989). Having determined that the Vehicles were inventory of the Debtor, and having further determined that BCI failed to comply with § 679.302(3)(b)'s requirement of filing a

UCC–1 financing statement, the Court finds that BCI's security interest in the Vehicles is voidable by a trustee in bankruptcy, or as in this case, a debtor in possession. *See* 11 U.S.C. § 544(a)[2]. As such, the Debtor may avoid BCI's interest in the Vehicles.

## II. Whether the Parties Entered into a Floor Planning Agreement is Irrelevant to the Case at Bar.

At oral argument, BCI argued that there is a factual dispute as to whether the Debtor entered into a floor planning agreement with BCI, therefore making summary judgment inappropriate. BCI has two bases for this objection: (1) during a Rule 2004 Examination, Michael DeMeo, the President of the Debtor stated that the Debtor did not receive floor plan financing from BCI; and (2) since BCI purchased the leases from the Debtor after the Vehicles had already been leased, it is factual impossible for BCI to have provided floor plan financing to the Debtor.

First, as noted earlier, the parties characterization of a transaction is not dispositive. Second, a factual analysis of the requirements for a floor plan financing agreement is inapposite to the relevant inquiry before this Court. The relevant inquiry before this Court is whether the Vehicles were the inventory of a licensed dealer. As discussed earlier, the Court finds that the Vehicles are the inventory of a licensed dealer.

Floor plan financing is not a condition precedent to the requirement of filing a UCC–1. Under Florida Statutes § 319.27

a financing statement must be filed to perfect a security interest in "the floor plan stock of a licensed dealer." BCI's reading of § 319.27 tacks on a purchase money requirement to this statute, this is not the case at all. Section 319.27 does not require the debtor to use the financing it has received to directly purchase the vehicles which make up its inventory. As stated previously, the phrase "floor plan stock" as used in § 319.27 merely refers to the inventory of a licensed dealer. As such, whether the Debtor did, or did not enter into a floor planning agreement with BCI is irrelevant to the foregoing analysis.

■ Even assuming *arguendo* that BCI is correct in its assertion that BCI needed to provide financing to the Debtor in order for the inventory exception to § 319.27 to apply, the purpose of floor plan financing requires the Debtor to prevail. The rationale behind vehicle floor planning can be traced back to the Uniform Trust Receipts Act, which was adopted by the Florida Legislature in 1951. *American Discount Co. v. Central Bank of Tampa,* 135 So.2d 10, 12 (Fla. 2d DCA 1961). Its purpose is to "enable dealers to obtain funds for the purchase of goods to maintain inventories at a level suitable to meet the demands of the market." *Id.* In the present case, the MPA served the exact same purpose.

From the record and the representations of counsel, it is clear that the Debtor financed its operation primarily through its arrangement with BCI. As each of the 1,200 Vehicles entered the Debtor's inven-

---

**2.** The so called "strong-arm" powers of the trustee under section 544(a) of the Bankruptcy Code gives the trustee the status of a "judicial lien creditor," and allows the trustee to avoid unperfected security interests and relegate the debt to the status of a general unsecured claim. *Kapila v. Atlantic Mortgage and Inv. Corp. (In re Halabi),* 184 F.3d 1335, 1337 (11th Cir.1999); 5 Collier on Bankruptcy ¶ 544.05, at 544–10 (Lawrence P. King ed., 15th ed.1979). The debtor in possession may exercise the avoidance powers of the trustee. *NCNB Nat'l Bank of Fla. v. Fogarty (In re Fogarty),* 114 B.R. 788, 791 (Bankr.S.D.Fla. 1990).

tory, the Debtor was "reimbursed" seriatim for the purchase price of that Vehicle. It is clear to the Court that the MPA is, in reality, a floor planning agreement, regardless of the parties characterization. It is the MPA's financing character which invokes the requirements of Article 9. *See* 4 James J. White & Robert S. Summers, Uniform Commercial Code § 30–9 (4th ed.1995). If BCI, as the buyer of leases, is to have priority against other creditors of the Debtor who might assume that the Debtor has not sold or encumbered the leases, BCI must publicize its claims by filing financing statements. Accordingly, it follows that it was necessary for BCI to file a financing statement to perfect its lien on the Vehicles.

### CONCLUSION

For the reasons stated in this Opinion, the Court finds that under Florida Statutes §§ 319.27 and 679.302, BCI was required to file a UCC–1 financing statement in order to have properly perfected its security interest in the Vehicles. Having failed to comply with this requirement, the Court finds that BCI does not have a valid lien on the Vehicles. Accordingly, BCI's security interest in the Vehicles is voidable by the Debtor.

### ORDER

In accordance with the foregoing analysis and being otherwise fully advised in the premises, the Court hereby **ORDERS AND ADJUDGES** as follows:

1. The Debtor's Motion for Partial Summary Judgment is **GRANTED**

2. BCI's Cross–Motion for Partial Summary Judgment is **DENIED**.

3. BCI does not have a valid security interest in the Vehicles.

4. Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate Final Judgment incorporating these findings of fact and conclusions of law will be entered contemporaneously herewith.